DANIEL COOK *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Homicide. Evidence. Boasting.*
    Testimony is admissible in a murder case to show statements made by the accused, several hours after the killing, boasting of the deed.

2. SAME. *Co-defendant. Previous conviction of crime.*
    It is not competent in a murder case to show that defendant's brother, who participated in the killing and had been indicted therefor, had been convicted of crime two years before in a municipal court then presided over by the deceased, where the evidence showed that the killing arose out of the occasion, without reference to any previous trouble.

3. SAME. *Witnesses. Code 1892, ¿ 1746.*
    Under Code 1892, § 1746, authorizing the interrogation of witnesses as to whether they have been convicted of crime, in order to determine their credibility, testimony of a conviction cannot be given by others until the witness has first denied the same.

4. SAME. *Instruction. Assumption of fact.*
    Where at the time deceased picked up a weapon the defendant was being securely held by two men and therefore unable to make an attack, an instruction which assumes that the deceased picked up the weapon to defend himself from an assault by defendant is erroneous.

5. SAME.　*Murder or manslaughter.*　*Question for jury.*

　　Whether a defendant was guilty of murder or of manslaughter
　　should be left to the determination of the jury, although the
　　evidence shows an unpremeditated killing by defendant's broth-
　　er in response to the request of defendant who had just been en-
　　gaged in a fight, and was being held by two men, confronted by
　　deceased armed with a stick to attack some one, when he made
　　the request.

6. SAME.　*Presumptions of innocence.*

　　All persons are presumed to be absolutely innocent of a crime
　　charged against them, in its entirety, and in all its material
　　parts, until the jury finds to the contrary on proper instructions,
　　based on competent and relevant testimony.

FROM the circuit court of Calhoun county.

HON. WILLIAM F. STEVENS, Judge.

Cook, the appellant, was indicted, tried, and convicted of
murder, and appealed to the supreme court. The facts are fully
stated in the opinion of the court.

*R. V. Fletcher,* for appellant.

Various witnesses were permitted to testify to statements
made by defendant, and some made by defendant's brother
after the difficulty was over. These statements were made when
the prisoners were arrested, and some two or three hours after
the difficulty.

These are, of course, no part of the *res gestae.* They can be
competent only on the theory of a conspiracy, so far as the
statements of the brother are concerned. It is well settled that
the declarations of a fellow-conspirator cannot be admitted in
evidence if such declarations are made subsequent to the con-
summation of the crime and unless facts of the conspiracy are
shown otherwise than by the declarations of the alleged con-
spirators. *Gillum* v. *State,* 62 Miss., 547; *Garrard* v. *State,*
50 Miss., 147; *Simmons* v. *State,* 61 Miss., 243.

Coming now to the consideration of the very damaging testi-
mony of the witness Lawrence Monahan. The witness testi-

fied that the alleged threat was made two or three years before the homicide, that it was directed toward Crawford as one of a larger class, that the condition of the threat was never fulfilled. This court has decided flatly that a threat made three or four years before the killing is too remote to be introduced in evidence. *Mackmasters* v. *State,* 81 Miss., 374. And it has further decided that a threat made twelve months before the affair is remote and subject to objection. *Owens* v. *State,* 80 Miss., 499.

Besides, how could this statement be competent when the condition of the threat had never happened? Put into the form of a syllogism, it is as perfect a *non sequitur* as one might ever confront. Thus: If Crawford makes me pay out any more money, I will kill him. But Crawford has never made me pay out any more money; therefore I will kill him, and do kill him. The only effect of permitting such testimony as this is to mislead the jury and get before them for their consideration certain foreign and irrelevant matter, showing that defendant was a crap shooter and that he went about making threats. This will not do. *Raines* v. *State,* 81 Miss., 489.

Even more objectionable, if possible, is the testimony about the convictions in the mayor's court of Ellzey. It should be remembered that these were convictions, not of defendant, but of the brother of defendant, the other Cook. They were three and two and a half years, respectively, before the killing; they were too remote in point of time to be competent. *Herman* v. *State,* 75 Miss., 340; *Raines* v. *State, supra.*

And, besides, they could furnish no motive for the crime. They were not convicted by Crawford; there were pleas of guilty in both cases. The fines were absurdly small. The affidavits were made out by another in each case. They did not affect this defendant. They only served to besmirch the character of the brother and co-defendant, and show that he was guilty of other and disconnected crimes, foreign to the issue then on trial. As such, they are subject to the very criticism that was so ably passed on the evidence in the Raines case. No

attempt had been made by defendant to show his good character or that of his co-defendant at that time, and yet these record proofs of convictions were brought in, tending to break down his character in violation of well-settled principles of evidence. *Kearney* v. *State,* 68 Miss., 233.

The second instruction for the state is open to the serious objection that in attempting to detail and recite the facts of the case, it omits an important feature which was admittedly true. For all the witnesses agree that when Crawford went out of the gate and faced about toward defendant, who was on the opposite side of the fence, and when Crawford picked up the brick or stick, defendant was securely pinioned from behind, being held by two men; in other words, defendant was at the time *hors de combat.* The instruction under review ignores this important fact, and charges the jury that if Crawford picked up the brick or paling to defend himself against the threatened attack of defendant, and that then defendant cried out, "Cut him, Lon," etc., and that Alonzo Cook heard this and acted on it, and stabbed Crawford, then defendant is guilty as charged. The jury is therefore informed in effect that the helpless condition of defendant, held a secure prisoner at the time, had no probative force in influencing their verdict. An instruction attempting to recite facts must recite all that are material, the circumstances favorable to defendant as well as those favorable to the state. *Wilburn* v. *State,* 73 Miss., 245; *Jackson* v. *State,* 66 Miss., 89.

*J. N. Flowers,* assistant attorney-general, for appellee.

A short while before the tragedy this accused was in a fight with other persons, and had just been separated from them. At the time Crawford was stabbed by Alonzo Cook, this accused had an ax in his hands, but was being held by Young and others. He was mad, cursing and threatening. Crawford had no part in the former difficulty in which appellant had been engaged, but happened to walk up just after the said difficulty had been

settled and about the time appellant was caught by Young. Appellant notified the crowd that it was safer for them to stand away from him, telling them at the same time that he would kill every one of them, and when he saw Crawford appear within a few feet of him, he said: "You stand back too, G——d d——n you! I will kill you." It seems that about this time Crawford, having walked a few feet inside of the yard through the north gate, walked back through the gate, and Alonzo Cook followed him on the outside; that about the time they got through the gate appellant called to his brother to shoot Crawford and kill him. And then about the time appellant made this exclamation, Alonzo stabbed Crawford in the left breast about the heart. Crawford fell on his face, and was dead in a few minutes.

Crawford was mayor of the village, and had been mayor, it seems, for several years. He appeared on the scene on this occasion as a peace officer. Nobody pretends he was there to take any part in any difficulty as against these two boys. Nobody says that he spoke a single word to these boys or to any one else. As soon as he appeared their attention was directed towards him of all the men in the crowd, and their attention seems to have fastened upon him until he was on the ground. He is said to have been a strong man physically, and was prominent in the community.

The reason for the joint attack made by these boys on this man can only be found in the fact that they were mad at him because of his dealings with them as mayor of the town. He had had occasion several times to place a penalty upon Alonzo Cook, who, it appears, charged Crawford up with his indictment in the circuit court. The two boys were together, taking each other's part in this fight, and taking each other's part, doubtless, through the long list of grievances which they had against this man.

While the court held, in McMasters' case, that a threat made by the accused five years before he killed his father was too

remote, yet the court did not mean to say that the age of the threat must necessarily be less than five years. In that particular case the threat was held to be too remote, but there may be circumstances under which a threat of that age may be proved. In the case at bar, it seems that the threat grew out of the same circumstances as prompted the killing.

There is no rule of evidence which requires that threats of this kind must be unconditional. There may be circumstances under which a conditional threat may not serve the purpose for which an unconditional one can be used, as where one might show a threat to justify an assault. But in a case like the one at bar, the threat shows the state of mind of the man making it; it shows existence of malice; it shows that he held Crawford as an enemy. "The mere fact, however, that it (the threat) is expressed in the alternative or upon a condition or contingency does not destroy its probative value, but the intervening fulfillment of the condition should ordinarily be shown, if it occurred." Wigmore on Evidence, sec. 107; *Reed* v. *State,* 68 Ala., 492, 496; *Phillips* v. *State,* 62 Ark., 119 (s.c., 34 S. W., 539); *Com.* v. *Crowe,* 165 Mass., 139 (s.c., 42 N. E., 563); *State* v. *Johnson,* 76 Mo., 121, 124; *State* v. *Sloan,* 22 Mont., 293 (s.c., 56 Pac., 364); *State* v. *Bradley,* 67 Vt., 465 (s.c., 32 Atl., 240).

The statements made by appellant to his brother after the killing were clearly admissible. They were admissions; they amounted to confessions; they demonstrated the purpose, the general purpose, of the two; they showed the presence of malice and design. In fact, more valuable or competent testimony could hardly be presented to the jury. Its admissibility is not dependent upon any proof of conspiracy.

Argued orally by *R. V. Fletcher,* for appellant.

CALHOON, J., delivered the opinion of the court.

Daniel Cook and Alonzo Cook are brothers. They were jointly indicted for the murder of Robert L. Crawford, who was

slain on June 7, 1903, by a stab with the large blade of a Barlow knife in the hands of Alonzo Cook. Severance was had, and separate trials, in both of which convictions were had, and Alonzo Cook sentenced to the penitentiary for life, and Daniel Cook, the appellant, sentenced to be hanged.

In the essential features of the case, as to the occurrences at the time of the homicide, the testimony was quite conflicting. The killing occurred on a Sunday at a place where there was a Sunday school celebration progressing in a church close by the scene of the killing. There was a large crowd there, and it is clear that appellant had a difficulty with some men called the "Blue boys," in the house of a Mr. Young, which was not very far from the church. In that difficulty the appellant was either ejected from or fell out of the house, and his arm and hand were injured, and his hand was bleeding. At this point, one Hollis, a constable, arrested appellant, and he was kindly taken by the constable to a well or cistern in the rear of the house to wash the blood off his hands. Appellant was very much excited, and saw an old ax, which he seized, and came back to where a crowd was. He was cursing and swearing, and told everybody to stand back, or he would kill them; and as the deceased, Crawford, came around the house, appellant said: "Here you are. I will kill you." But he did not call anybody's name. Several persons were standing near appellant, and in front of him; and thereupon the constable, Hollis, and a Mr. Young, who were stout men, took hold of appellant on each side, and held him securely, pinioning his arms to his body. While things were in this situation, Crawford walked out of the gate into another inclosure, Alonzo Cook walking just behind and passing him. Some of the witnesses testify that appellant said, "Kill him, Lon; cut him!" whilst others, even of the state witnesses, say he said, "Kill them, Lon; cut them!" Many of the state witnesses testify that Crawford, after getting out of the gate, stooped and picked up a paling, and subsequently a brick, and was facing appellant, and that thereupon Alonzo Cook

turned and stabbed him. Witnesses for the appellant said that when Crawford went through the gate he stooped and picked up a brick and threw it at Alonzo Cook, who was standing there doing nothing, and that then Crawford picked up a stick and advanced upon Alonzo Cook, and then Cook stabbed him. It seems clear that Alonzo Cook came behind Crawford, and passed him and got several paces in front of him before he turned and stabbed him, and it might be a fair inference by the jury that he did not stab him until Crawford made a demonstration against either him or Daniel Cook with a stick or a brick. It should be noted that all this time appellant was being securely held by Young and Hollis, and that there was a crowd there, and that N. G. Blue, a witness for the state and a relation of the deceased, testified that he was standing nearer to appellant than Alonzo Cook was, and that he did not hear appellant say anything about cutting or stabbing anybody.

On the trial the court allowed the witness Hollis to testify that, about two hours after the killing, appellant caught his brother, Alonzo, around the neck and said, "I have got a brother who had the gizzard to do what we have wanted to do for a long time," the admission of which is assigned for error. The court allowed the witness Enochs to say that, two or three hours after the difficulty, appellant's brother, Alonzo Cook, said, "Yes, I killed him, and I did exactly what I intended to do," and that appellant thereupon slapped Alonzo on the breast and said: "Yes, I told you to do it; and, by God! we have killed the bully of this town, and made ourselves a reputation." We think this testimony competent and properly admitted.

The court allowed one Monahan, a state witness, to testify that, two or three years before the killing, he and appellant and his brother, Alonzo, were in the woods, playing "craps," and, while there, deceased and one Cook came towards them, and appellant said to witness that "if Cook, Crawford, and Hiller made him (the appellant) pay any more money he intended to kill them." There is no evidence whatever of any previous

conspiracy between the brothers to kill Crawford, nor is it shown anywhere that appellant was ever made to pay out any money by any of these men, or that he ever paid out any money.

The court allowed the state to introduce the docket of the mayor of the village of Ellzey (who was Crawford, the deceased) to show that, some three years before, one Hiller made an affidavit against appellant's brother, Alonzo Cook, before Crawford, the mayor, charging, not the appellant, but his brother, Alonzo Cook, with gambling, and that Alonzo pleaded guilty, and was fined $1 and costs, which he at once paid. The court also permitted the state to introduce the docket of the same mayor to show that in January, 1901, two or three years before the killing, one Blue made an affidavit before Crawford, the mayor, charging, not the appellant, but his brother, Alonzo Cook, with an assault on one Hiller, and that Alonzo pleaded guilty, was fined ten dollars, and at once paid this. The court also allowed the state to introduce the records of the circuit court of the county to show that at the September term, 1900, not the appellant, but the appellant's brother, Alonzo Cook, was indicted for gambling; and the court allowed the indictment in this case to be presented to the jury, with the writing on the back of the indictment by the jury, finding Alonzo Cook guilty, and to show that he was sentenced to pay a fine of $150. This was two or three years before this killing. The court also allowed witness McCormick to testify that in the year 1900, being two and one-half years before the killing, he, as deputy sheriff of the county, arrested, not the appellant, but his brother, Alonzo, on the charge of gambling, and that Alonzo said that "Bob Crawford was at the bottom of the matter, and if it had not been for him, the bill would not have been found." We will say now, without further delay, that these introductions of dockets of convictions of appellant's brother several years before the killing were entirely inadmissible. It was too remote. It is not possible that they could have shown any motive for the killing, which, from the testimony, arose simply out of the occasion, and without

any reference to any previous trouble. We understand that Code 1892, § 1746, has no sort of reference to the condition of things upon which the court acted in the case before us. ·That section simply permits witnesses to ˚be interrogated as to whether they had been convicted of any offense—the purpose being, of course, to go to their credibility—and the statute allows their statement to be contradicted; but it is nowhere provided by the law, even upon this matter of credibility, that testimony might be introduced as to the conviction of a witness unless the wit- · ness had first denied it. We discard now, as utterly irrelevant and immaterial and too remote, any testimony as to what was done to Alonzo Cook by the courts.

Instruction No. 2 given for the state is erroneous. It is based upon a recital of facts of the case, but is absolutely silent as to the well-established fact that appellant was securely held by Young and Hollis at the time when the instruction wants the jury to assume that Crawford took up the brick or stick to defend himself from an assault by appellant. Any charge to a· jury which undertakes to give the facts must give all which are.  · material, whether favorable to the defendant or the state. This is thoroughly well settled by numerous adjudications of this and other courts, which will be found in the brief of counsel for appellant. Certainly no conviction can be upheld, where the facts are controverted, based upon an instruction which assumes, as this does, that Crawford, the deceased, picked up a· brick or stick to defend himself against the attacks of Daniel Cook. No witness testifies to this, and it was impossible that Crawford could have been apprehensive of an attack from the appellant, who was being securely held.

The twenty-second instruction asked for by the defendant should have been given, though we might not reverse for this alone, because of the number of the charges. It simply says that, even if the jury believe that Alonzo Cook was guilty of murder, and also believe that appellant said, "Cut him, Lon; shoot him!" and even though Alonzo acted on these words, yet

appellant could be guilty of no more than manslaughter, if appellant's declaration was made in the sudden heat of passion. Appellant and Alonzo were. each responsible only for what he did, unless there was a previous conspiracy to commit the crime.  The difficulty arose without premeditation of the parties, as seems manifest.  It is undisputed that Alonzo Cook was sitting in a buggy, talking to a friend, at the time of the origination of the trouble, and that, hearing the row, he went to the place where his brother, the appellant, was, in a fight with the "Blue boys," and that he did not have on that occasion any communication whatever with appellant before the fight. From the testimony of state witness Young, it is not clear that the jury might not infer that appellant, if he used the words, meant them for the men who had hold of him, not for Crawford. Appellant had done nothing to Crawford; Crawford had armed himself with a brick or stick to attack somebody; he was in front of appellant; and if appellant had then and there broken away and killed Crawford, it should have been left to the jury to say whether he had committed manslaughter or a crime of graver import.  And if the jury might so find if the appellant had done the killing, was it any graver for him, under the circumstances, to call out to others to kill?  If the act of Alono was murder, nevertheless, the jury should not be excluded from considering the surroundings of appellant in making up their verdict, and in the determination of the question whether, as to him, it was manslaughter or murder.  This becomes of more force when we consider that many of the witnesses, even for the state testified that appellant said "Cut them," instead of "Cut him," and the jury might conclude that the remark was not directed at Crawford.

The rules of law for the conduct of criminal trials are for the benefit of the whole society and for the protection of the innocent; and all persons are presumed to be absolutely innocent of the crime charged, in its entirety and in all its material parts,

until the jury finds to the contrary on proper instructions, based on competent and relevant testimony.

We do not decide in this case any of the questions as to the competency of jurors, nor, indeed, do we decide anything not expressly disposed of in this opinion.

*Reversed and remanded.*