196 So.2d 878 (1967)
George Denman CARROLL
v.
STATE of Mississippi.
No. 44326.
Supreme Court of Mississippi.
March 20, 1967.
Suggestion of Error Overruled April 10, 1967.
*879 Robert B. Smith, Robert W. Elliott, Ripley, for appellant.
Joe T. Patterson, Atty. Gen., by Guy N. Rogers, Asst. Atty. Gen., Jackson, for appellee.
SMITH, Justice:
Appellant, George Denman Carroll, shot and killed Marshall Drewery at about 3:00 o'clock on the afternoon of January 25, 1966, at the Village of Faulkner in Tippah County.
He was indicted for murder and was tried and convicted in the Circuit Court of Tippah County, and sentenced to serve a life term in the Mississippi State Penitentiary.
A summary of the facts, as disclosed by the record, stated most favorably to the theory of the prosecution follows.
The homicide occurred in the office of a small filling station, photographs of the interior of which are in the record. Appellant concedes that these pictures give a "fair representation" of the inside of the station at the time of the fatal difficulty.
Appellant testified that some ten years previously he and his father had engaged in a quarrel or difficulty with Drewery, in which Drewery had "beat up" his father and had shot at appellant.
On the afternoon of the homicide, appellant had arrived first at the filling station, where he had gone to make a telephone call and to get some clothes that the laundry had left there for him. Shortly afterward Drewery arrived and sat down on a stool. Appellant was sitting on a desk.
Robertson, a witness for the prosecution, testified that he was in the station when appellant and Drewery arrived. He said:
"The first I heard, Denman (appellant Denman Carroll) asked him, said, `What do you think about whooping (sic) an old man'? And he (Drewery) said, `What'? And he said, `You remember the time that you and Lyman (Drewery's brother) whooped Daddy over there in the bottom.' He (Drewery) said `Lyman didn't have nothing to do with that,' and says, `I was the one that done that,' and says, `I thought that was over and forgotten.' And he (Drewery) said, `You going to bring that up again'?"
Appellant replied that he "hadn't forgot it." When appellant said that, Drewery took off his coat and laid it on a counter and appellant "he out with the gun."
The witness testified that, when appellant pulled the gun out of his pocket, Drewery "was standing there with his hands down beside him." He said that Drewery had nothing in his hands, that his hands were outside of his pockets, and that he was *880 not making any move toward appellant. When appellant drew the gun, according to his own testimony, "all of the rest of them (other than appellant and Drewery) got up and run out."
As they left the filling station, a number of shots were heard. Appellant testified that he emptied his automatic pistol, which contained four cartridges, at Drewery. A doctor and an undertaker stated that there were thirteen bullet wounds on the body of Drewery, but did not undertake to state which were caused by the entrance and which by the exit of bullets.
The testimony of other witnesses tended to corroborate the version of Robertson as to what occurred immediately preceding the shooting.
At least one witness testified that, within two or three minutes after the shooting, appellant, when told that he had killed Drewery, stated: "I aimed to, * * *" Another witness said to him, "Denman, you shouldn't have done that." Appellant replied, "You can feel sorry for the son of a bitch, if you want to, I don't." Appellant further said, "He mistreated my Daddy here years ago and I said then I would get him for it."
It is undisputed in the record that Drewery had no weapon, unless an ordinary pocket knife which was still in his pocket, unopened, after his death, may be so classified. Also, appellant was heard to say that he had "got him (Drewery) to admit that he was the one that hit his Daddy at one previous time and said that was what he wanted to know about it." Appellant then said that he had told his Daddy that he was going to get him.
Appellant denied making these statements, but his testimony regarding the events preceding and at the time he pulled his gun is substantially the same as that of the witnesses who testified for the prosecution. After some discussion as to certain shirts belonging to appellant, which had been laundered and were at the filling station, appellant took offense at a remark made by Drewery about them. Appellant said that he then told Drewery that he did not have to "whip an old man to get the money" to buy the shirts, referring to the difficulty which had occurred some ten years previously. He said it was then that Drewery took off his coat and stood up and said: "Let's settle it right now and be done with it." At that moment, appellant also stood up, drew his pistol from his lefthand pocket and placed it in his right hand.
Appellant admits that it was he who introduced the subject of the old quarrel and admits that Drewery replied, "I thought that was all forgotten Denman." Appellant concedes that when Drewery took his coat off that it was then he pulled out the gun, saying, "I took it out of my left pocket and put it in my right hand."
He was asked this question: "Don't you remember pointing it at the man and telling him, `Now is the time' or something like that, and when you pulled that gun out and pointed it right at his midsection there and a few witnesses saw you, and that's when James Robertson and the rest of those people ran out of there? Wasn't that the truth?" Appellant answered: "Yes, sir. That's the truth."
Appellant said he wasn't "paying any attention" and couldn't say whether Drewery had anything in his hands at that time or not, but that his hands were down by his sides when he drew the gun. The reason given by appellant for shooting and killing Drewery was that he was afraid of him and that, although appellant had already drawn his gun, Drewery advanced toward him "and was moving his hands behind him, I couldn't see what he was going for or anything and he had shot at me once before and whooped my Daddy up with a pistol and I just started shooting and running backwards." He also said that just before he fired, Drewery said, "You haven't got guts enough to use that damn gun * * * I'll just stomp the hell out of *881 you right now and be done with it, get it over with."
On direct examination, appellant had denied that, some two years previously, he had made a threat against Drewery in the presence of witness Rowland and others. In rebuttal, Rowland testified that, on the occasion in question, appellant, in referring to Drewery, said, "I have a little score that I need to settle with that fellow there."
Appellant assigns and argues that the trial court committed a number of prejudicial errors, any one of which requires the reversal of this case. The first of these is to the effect that the trial court was in error in permitting the witness Rowland to testify as to this threat made by appellant against Drewery some two years prior to the homicide, for the reason that it was too remote.
In support of this assignment appellant cites Myers v. State, 167 Miss. 76, 147 So. 308 (1933) and Mackmasters (McMasters) v. State, 81 Miss. 374, 33 So. 2 (1902), in which, under the facts in those cases, alleged threats were considered too remote and thus were held inadmissible.
In the case now before this Court, it is conceded by appellant that it was he who introduced the subject of the beating administered to his father by Drewery some ten years previously, and that this remark brought on the fatal quarrel. There is also testimony that immediately following the homicide, appellant stated that he had promised his father that he would "get" Drewery for that old affront and injury and that in killing Drewery he had done it. It is also clearly in evidence that Drewery's response to appellant was that he thought that the old incident was over and forgotten, and it was appellant who replied then that he hadn't forgotten it.
Under the circumstances in evidence, the jury was warranted in finding, and apparently did find, that the bitter memory of this old quarrel, when Drewery had beaten his father, years ago, had continued to smoulder in the mind of appellant for the ten years intervening and that this threat, uttered against Drewery and testified to by Robertson, was an expression of his long entertained animosity toward Drewery and of his intention eventually to "settle the score" and to "get" him for it. These facts distinguish this case from Mackmasters (McMasters), supra, and Myers, supra. A threat may be too remote in the absence of proof of a connection between the threat and the underlying cause of the fatal quarrel. Here, by appellant's own admission, he had not forgotten the old quarrel, although a long time had elapsed, and there was evidence that he said he had promised his father that he was going to get Drewery on account of it. The final difficulty, which led to the killing of Drewery by appellant, was brought on wilfully and directly by appellant in renewing the old quarrel. These circumstances warranted the jury in connecting the threat with the killing and in finding that the homicide was the result of appellant's long-held grudge and of his intention eventually to "get" Drewery.
The threat sheds light upon appellant's motive in shooting Drewery; it discloses his state of mind toward him, and is a circumstance which the jury might properly have considered in determining whether there was premeditation and in deciding who the aggressor was.
Appellant also challenges the action of the trial court in permitting witnesses to testify as to the statements made by him immediately following the shooting, citing King v. State, 65 Miss. 576, 5 So. 97 (1888).
In King, supra, it was the appellant who sought to prove a declaration which he had made as to the reason why he had shot the deceased; the declaration was self-serving and made by appellant after he had been arrested. King is entirely different factually from the case here.
*882 In Cook v. State, 85 Miss. 738, 38 So. 110 (1904), this Court approved the admission of testimony as to statements made by defendant two or three hours after the killing, boasting of the deed. The Court said:
"On the trial the court allowed the witness Hollis to testify that, about two hours after the killing, appellant caught his brother Lon around the neck and said, `I have got a brother who had the gizzard to do what we have wanted to do for a long time,' the admission of which is assigned for error. The court allowed the witness Enochs to say that, two or three hours after the difficulty, appellant's brother Lon Cook said, `Yes; I killed him, and I did exactly what I intended to do,' and that appellant thereupon slapped Lon on the breast and said, `Yes; I told you to do it, and, by God! we have killed the bully of this town, and made ourselves a reputation.' We think this testimony competent and properly admitted." 85 Miss. at 745, 38 So. at 111.
To the same effect, see Gamble v. State, 254 Miss. 822, 183 So.2d 172 (1966), where this Court held that such statements were admissible  first, as being part of the res gestae, citing Thompson v. State, 220 Miss. 200, 70 So.2d 341 (1954); Magee v. State, 145 Miss. 227, 110 So. 500 (1926); and, second, as declaration against interest.
It is argued by appellant with great earnestness that he was the only eyewitness to the actual shooting, since, according to his testimony, when he drew the gun "all the rest of them got up and run out." He asserts that his testimony as to what happened thereafter, not having been contradicted by any other witness, or by the physical facts in the case, must be accepted, and entitled him to an acquittal. In support of this contention, he cites Lee v. State, 232 Miss. 717, 100 So.2d 358 (1958).
The rule upon which appellant relies to sustain this point is stated in Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933), and is as follows:
"It has been for some time the established rule in this state that where the defendant or the defendant's witnesses are the only eyewitnesses to the homicide, their version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts or by the facts of common knowledge. (Emphasis added) 165 Miss. at 209, 147 So. at 482.
This case does not come within the stated rule. Here, appellant gratuitously renewed the old quarrel by taunting Drewery with having beaten up an old man, but Drewery's response was conciliatory and to the effect that he thought the old trouble was over and had been forgotten. Appellant refused to be placated and, in reply, told Drewery that he hadn't forgotten about it. It was then that Drewery stood up, and said that they might as well settle the matter, taking off his coat, obviously in contemplation of a fist fight with appellant. Appellant was a young man, 37 years of age, and not quite as heavy as Drewery who was 50 years old and, according to appellant, "had a big stomach." There was no such marked disparity between them, nor such physical superiority on the part of Drewery, as to require or even to permit a finding by the jury that appellant was warranted in using a gun to repel a physical assault by Drewery. In fact, the jury would have been justified in finding any advantage of this kind to lie with the younger, better conditioned, appellant.
The quarrel had progressed no further than this when appellant pulled his gun on Drewery. Appellant said:
"I was sitting there till he got up and pulled his coat off and threw it over on the desk, and when he did that, well, I took the gun out of my left pocket and put it over in my right hand."
*883 When this happened, Drewery was warranted in believing that appellant intended to use the gun to shoot him and became, at that moment, entitled to act upon reasonable appearances and to defend himself, however he might. As it turned out, he had no weapon capable of being effective against a gun drawn (his pocket knife which was his only possible weapon was found still unopened, in his pocket after the killing). If he placed his hands behind him as appellant said he did, or into his pockets, and, if he had done so for the purpose of getting a weapon, he would have been justified in so doing, and in using such weapon in what must reasonably have appeared to be necessary self-defense. He was not required to assume that appellant, having drawn his gun in the quarrel, would not use it to kill him or to do him some grave injury.
The jury was not required to accept as reasonable appellant's version of the immediately ensuing facts, or to believe that an unarmed man, considerably older and somewhat corpulent, advanced upon him in the face of the drawn gun. Moreover, having drawn the gun upon Drewery without justification, the right to act in self-defense lay with Drewery, not appellant.
In reviewing the sufficiency of the evidence to support the verdict, this Court must accept as having been established all that was proved by the evidence, as well as all that such evidence reasonably tended to prove, together with all reasonable inferences to be drawn therefrom, favorable to the theory of the prosecution.
The evidence was such as to warrant the jury in concluding that, when appellant shot and killed Drewery, he was neither in real nor apparent danger of suffering death or grave bodily injury at the hands of Drewery, and that he did so in a premeditated design to cause his death.
The other assignments have been examined and none of the matters assigned is considered to constitute prejudicial error or to require reversal of appellant's conviction of murder.
The jury's verdict had the effect of resolving all conflicts in the evidence against appellant, and the findings of the jury, as the trier of facts, are conclusive upon this Court.
Affirmed.
GILLESPIE, P.J., and PATTERSON, INZER and ROBERTSON, JJ., concur.