396 So.2d 625 (1981)
John M. STEED
v.
STATE of Mississippi.
No. 52507.
Supreme Court of Mississippi.
April 8, 1981.
*626 David E. Holderfield, Percy S. Stanfield, Jr., Stanfield, Holderfield & Hall, Jackson, for appellant.
Bill Allain, Atty. Gen. by Charles W. Maris, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before SMITH, LEE and BOWLING, JJ.
LEE, Justice, for the Court:
John M. Steed was convicted in the Circuit Court of Madison County on a charge of murder and was sentenced to life imprisonment in the Mississippi State Penitentiary. He has appealed and assigns six (6) errors in the trial below.
On October 28, 1979, Madison County Deputy Sheriff Merle Squires was called to an area of Ross Barnett Reservoir on Mississippi Highway # 43 where he found a female body lying face up, the upper half being on rocks upon the bank and the lower half in the water. Squires frightened off buzzards, which were around the body, and radioed Madison County Sheriff Billy Noble, who came to the scene with a photographer from the Canton Police Department. The body was clad in blue jeans, a maroon shirt, and high boots. Also, there were found on it a watch, ring and necklace, and it was partially bound with a rope. The body was photographed and removed to a Canton funeral home where it was fingerprinted by a highway patrol investigator. Contemporaneously, the Madison County Sheriff's Department began an investigation to determine the victim's identity.
The department received a phone call on October 29, 1979, from a young woman who reported her roommate missing, and pursuant thereto, investigators went to 501 Winter Street in Jackson, obtained a description, photograph and purse of the missing woman, Donna McMillan. Latent fingerprints on articles found in the purse were matched by the State Crime Laboratory with the prints of the victim, and she was positively identified as Donna McMillan.
An autopsy revealed strangulation as the cause of death, and abrasions on her neck specifically indicated strangulation by a rope. She had not been raped or assaulted, and it was medically determined that the victim had been dead at least two (2) days upon discovery, but more probably three (3) to four (4) days. The investigators learned from the victim's roommate that she had recently been seen in the company of appellant with whom she had lived for six (6) years, and by whom she had an infant son, but they were separated at the time. The officers went to appellant's home, but he was absent. They returned the next day, found him at home, and appellant voluntarily accompanied them to the police station for questioning. He signed a waiver of his Miranda rights and gave a free and voluntary statement to the effect that on October 24, 1979, he had picked up Donna McMillan at the apartment on Winter Street at approximately 12:00 p.m. (Wednesday before the Sunday discovery of her body), that he had an appointment to go to the VA hospital for out-patient treatment of a gunshot wound in his back inflicted approximately a month before, and that they went to the VA hospital where he obtained treatment. They left there and went to the Seago Truck Stop on Gallatin and I-20 in Jackson where he put her out at a pump on the far end of the gas island. He related that she saw a trucker there whom she knew and she was going to catch a ride with him and go to "North Carolina or some place."
Sheriff Noble asked appellant whether he had killed his wife, and, according to Sheriff Noble, appellant dropped his head and, after some nervous gestures, said, "No." Two of the deceased's friends testified that on two occasions two (2) weeks and one (1) week prior to Donna's death, appellant stated "She is a dead ____," and told about trouble between them.
*627 Appellant's mother testified that on Wednesday, October 24, appellant was at home by 5:00 p.m., indicating that he could not have slain Donna. She further stated that she spoke with Donna over the telephone on Thursday, October 25, 1979, around 2:00 a.m. Prior to trial, Mrs. Steed told Deputy Sheriff Squires the following:
"A. I told Mrs. Steed who I was, who I worked for, and I asked her what time did John [Steed] come home on the day he went to the hospital, which would be the 24th, that I 
Q. And what, if anything, was her response?
A. She told me, she hesitated a little bit on the phone and she says, now if I told you that he come home at 5:00 o'clock in the afternoon, you would hold me to that in court, wouldn't you?
Q. And what did you tell her?
A. And I said, yes ma'm, I would. And she said, then I'm not going to answer you."

I.  II.
Appellant contends (1) that the court erred in overruling his motion in limine to suppress the testimony of State's witnesses Audrey Williams and Mary Shoemaker relating statements made by appellant two weeks and one week before Donna's death as remote and (2) the court erred in overruling appellant's motion in limine to suppress the introduction of a color photograph of the victim on the grounds that it had no probative value and was highly inflammatory. Threats made by an accused, although uncommunicated to the victim, are admissible in evidence to show malice, premeditation and criminal intent. Threats which are so remote as to have no evidentiary value are not admissible. Testimony of threats has been ruled admissible from an accused as long as two months before the killing of the deceased. Whether or not a threat is too remote to be admissible is a question addressed to the sound discretion of the trial judge. Parr v. State, 362 So.2d 634 (Miss. 1978); Grooms v. State, 357 So.2d 292 (Miss. 1978); Sharplin v. State, 330 So.2d 591 (Miss. 1976). We are of the opinion that the trial judge did not abuse his discretion in admitting the statements, that they were not remote, and they did have evidentiary value.
The photograph of the victim was taken at the scene where her body was found and was the only one of three such pictures not suppressed by the trial judge. The body was clad in a maroon blouse, easily recognizable, and was identified on the body as the blouse belonging to Donna McMillan. The pictures also had some relevancy as to the identity of the victim, and the length of time she had lain at the place where discovered. We think the picture had some probative value, was not highly inflammatory and that the trial judge did not abuse his discretion in overruling the motion to suppress and admitting the photograph in evidence. Cessna v. State, 381 So.2d 173 (Miss. 1980); Dase v. State, 356 So.2d 1179 (Miss. 1978); Mallette v. State, 349 So.2d 546 (Miss. 1977); Slyter v. State, 246 Miss. 402, 149 So.2d 489 (1963).

III.
The appellant contends (3) that the court erred in permitting the State witnesses, Sheriff Billy Noble and Deputy Sheriff Merle Squires, to testify that when appellant was arrested he confessed his guilt by lowering his head and causing his left eye to jump.
After appellant was given the Miranda warnings he made a voluntary statement to the officers exculpating him from any connection with the homicide. Over appellant's objection, Sheriff Noble testified that, when he asked appellant whether he killed Donna McMillan, appellant lowered his head, began shaking, tensed his facial muscles, and his left eye began to twitch. When appellant was interrogated, he did not inquire about Donna's death or her physical condition.
Appellant argues that the testimony of Sheriff Noble violated his right against self-incrimination guaranteed by the Fifth *628 and Fourteenth Amendments, and cites Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). We are of the opinion that Doyle is not authority for such position. As stated, after being advised of the Miranda rights, appellant freely and voluntarily talked with the officers rather than choosing to remain silent. His statement was admissible in evidence, as were his appearance and reactions.

IV.
The appellant contends (4) that the court erred in refusing to grant his motion for a mistrial after the district attorney made remarks in his argument about appellant's failure to answer.
The remarks made by the district attorney and found objectionable by the appellant follow:
"You know, they imply that initially where there is a little smoke there may be some fire, and all this started out fun and games yesterday but it got to about 6:00 o'clock yesterday afternoon and then the heat got on and they wanted to send everybody out, and then when Sheriff Noble got to talking about where the man wouldn't look him in the eye, and tell him, answer him, that question, then the fun and games went out the window, hoping to have dreamed that."
Appellant cites Austin v. State, 384 So.2d 600 (Miss. 1980) and argues that under Austin the argument was reversible error. The contention is not well founded and is without merit in view of the fact that we have held the testimony of Sheriff Noble under Assignment III to be admissible. The district attorney's argument followed that evidence.

V.  VI.
The appellant contends (5) that the lower court erred in refusing his request for a peremptory instruction of not guilty and (6) that the verdict of the jury was against the overwhelming weight of the evidence.
In Bullock v. State, 391 So.2d 601 (Miss. 1980), we stated the rule concerning motions for directed verdicts and requests for peremptory instructions in criminal cases as follows:
"In passing upon a requested peremptory instruction, or motion for directed verdict, in a criminal case, all evidence most favorable to the State, together with reasonable inferences, are considered as true and evidence favorable to the appellant is disregarded. If such evidence will support a guilty verdict, the request for peremptory instruction must be denied, as well as the motion for directed verdict. Warn v. State, 349 So.2d 1055 (Miss. 1977); Toliver v. State, 337 So.2d 1274 (Miss. 1976)." 391 So.2d at 606.
Summarizing the evidence, it showed the following for the State:
(1) The body of the deceased was indeed that of McMillan.
(2) Mrs. McMillan met her death as a result of ligature strangulation.
(3) She had been dead for a period of two to four days before being found on October 29, 1979.
(4) She had been seen in a van with appellant on October 24, 1979, prior to the discovery of her body.
(5) The clothes on the body matched the clothes she was seen wearing when she entered the van containing the appellant.
(6) Mrs. McMillan was extremely afraid of the appellant.
(7) Appellant had a motive to kill the deceased, since she had been seeing other men and was leaving him.
(8) Two witnesses testified that the appellant threatened to kill her on two occasions.
(9) Appellant's exculpatory story was disputed by a State witness who testified that he did not see appellant or a dark van in the vicinity (Seago Truck Stop) where appellant said they were on October 24, 1979.
The trial judge thoroughly instructed the jury with reference to circumstantial evidence. The credibility of the witnesses and *629 the weight and worth of their testimony, including that of appellant, were for the determination of the jury. The guilt issue was properly submitted to the jury, and we are of the opinion that the jury verdict is supported by the evidence. There being no reversible errors in the trial below, the judgment of the lower court is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and HAWKINS, JJ., concur.