513 So.2d 916 (1987)
William SHAW
v.
STATE of Mississippi.
No. 57181.
Supreme Court of Mississippi.
September 23, 1987.
Rehearing Denied October 28, 1987.
*917 Donald L. Kilgore, Alford, Thomas & Kilgore, Philadelphia, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Henry C. Clay, III, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and ANDERSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:

I.
William Shaw was convicted of murdering his ex-wife, Mary Bell, and sentenced to life imprisonment by the Attala County Circuit Court. The site of the crime was Neshoba County, venue was changed on his motion.
Shaw appeals and assigns as error: the introduction of evidence of another and separate offense; failure of the trial court to quash the indictment because witnesses were not listed thereon allegedly as required by statute; and finally the admission of testimony of prior difficulties between him and his former wife.

II.
The facts pertinent to this cause of action are these: on September 7, 1985, at approximately 6:10 p.m., the Neshoba County Sheriff's Department received a telephone call from a person who identified himself as William Shaw and who requested to speak to Sheriff Glenn Waddell. Upon being told the sheriff was not in, the caller left his telephone number and hung up the phone. Approximately ten minutes later the caller phoned again, and this time he not only identified himself as William Shaw but further stated that he had "just killed two people."
Once again, the telephone rang, and Deputy Sheriff Gregg George, who had arrived since the second call, spoke with the caller, who again identified himself as Shaw. The caller stated that he had just killed two people, his former wife, Mary Bell and her male companion. Deputy George then inquired of Shaw where the killings had taken place, and was told that the bodies were located at Mary Bell Shaw's house in the Rocky Hill Community in Neshoba County, Mississippi.
Responding, as good officers should, members of the Neshoba County Sheriff's Department proceeded to the residence of Mary Bell. Deputy George discovered her body approximately 75 yards from her house in a dirt road on the edge of a field across from the home. George testified that he observed a gunshot wound to the rear of her head, as well as additional wounds all around her head. He testified also that there was a trail of blood leading from her home to where the body lay, and following this path he discovered the body of a man inside the home. This man was later identified as Arnold Lee Milam.
At this time, Sheriff Waddell arrived and it was determined that William Shaw was not then present at the scene. Accordingly, with the aid of a neighbor, Lee Pinter, a call was placed to Shaw's residence and Shaw was requested to stay at home until the police arrived. This he did.
When Deputy George and Sheriff Waddell reached Shaw's home, William Shaw was advised of his rights, and at that time he made no statement, except to make an inquiry on the way to the jail as to the identity of the officers who conversed with him on the phone. At his home he turned over his gun to the sheriff and was transported to the Neshoba County Sheriff's Department and jailed.
Testimony at trial revealed that approximately eight people were dove hunting on *918 the day of the murder in a field across from the residence of Mary Bell Shaw, three of whom testified that they heard a gunshot unlike that normally fired during dove hunting, a scream, and were then approached by William Shaw who led them past the body of Mary Bell Shaw and to her home, whereupon William Shaw offered to show them a second body. This invitation was declined.
After his invitation was declined, Shaw declared his intention to leave, telling the dove hunters to stand behind the truck and watch the "mess," calling Milam's body a "dead m.f." and referring to Mary Bell's body as a pile of bowel waste, using a four-letter vulgarity. The placement of the body of Mary Bell prevented the dove hunters from leaving the field in their vehicle so it was necessary for them to walk to the residence of an acquaintance and from there they placed a call to the sheriff's office approximately one-half hour after Shaw's departure.
Shaw admitted to having had a discourse concerning the bodies with the dove hunters, but denied their allegations that he told them at the time that he was responsible for the killings. Shaw contended instead that his wife had been killed by him accidentally while he struggled with the man  allegedly an intruder in her home  for his gun. Shaw alleged he had gone to Mary Bell Shaw's residence only for the purpose of retrieving some wandering livestock belonging to him and his reason for carrying his gun stemmed from his concern that something was wrong.
Following a full trial by jury a verdict of guilty was returned and Shaw was sentenced to serve life for the murder of Mary Bell Shaw. Shaw subsequently filed a motion for a new trial which the lower court overruled, and from which arises this appeal.

III.
Shaw first argues that the trial court erred in allowing the state to introduce evidence of the murder of Arnold Lee Milam on at least nine separate occasions. This evidence included reference by the prosecution to the phone calls placed by Shaw to the sheriff's department, in addition to mention made to the "victims" at various points during the trial and the testimony of the dove hunters.
Too, appellant claims the damage to his defense was further exacerbated when a sketch drawn by the sheriff's department, showing the layout of the home and the surrounding land, including the location and identity of the two bodies, was admitted into evidence over objection of counsel.
Generally, evidence of other crimes separate and distinct from that charged in the indictment is inadmissible. Robinson v. State, 497 So.2d 440 (Miss. 1986); Donald v. State, 472 So.2d 370 (Miss. 1985). However, such evidence is admissible where offenses are so interrelated as to constitute a single occurrence or closely related occurrences; where the separate offense is material to prove motive and is apparently connected to that which is charged; or where the charged offense involves a series of criminal acts which must be proved to make out a defense or where it is necessary to prove scienter or guilty knowledge. Williams v. State, 463 So.2d 1078 (Miss. 1985); see also Younger v. State, 301 So.2d 300 (Miss. 1974). Where evidence of another crime forms part of a transaction of which the crime charged is so intimately connected therewith that one cannot be proven without some proof of the other, the evidence is admissible. Page v. State, 369 So.2d 757 (Miss. 1979).
The state argues that the testimony of these witnesses is admissible under the so-called "res gestae" exception.[1]See, Brooks v. State, 242 So.2d 865 (Miss. 1971) ("evidence of a crime other than the one charged is admissible to prove the identity of the defendant, scienter or guilty or criminal knowledge, criminal intent or purpose, motive, a plan or system of criminal action where continuing offense is charged, or *919 where other crimes form part of res gestae"). Further, the state has a legitimate interest in telling a rational and coherent story of what happened. Giles v. State, 501 So.2d 406 (Miss. 1987); Brown v. State, 483 So.2d 328 (Miss. 1986); Turner v. State, 478 So.2d 300 (Miss. 1985); Neal v. State, 451 So.2d 743 (Miss. 1984).
In Neal v. State, 451 So.2d 743 (Miss. 1984), a prosecution for capital murder, evidence that defendant murdered two other victims at the same time was admissible as evidence which was material to establish the defendant's motive to kill the victim and as evidence which was integrally related in time, place and fact with the murder of the victim for which the defendant was tried.
We conclude that under the exception for admission of other crimes  motive, intent, preparation and plan  the trial court was not in error. The facts here indicate that once Milam had been disposed of, Shaw pursued and killed, his wife. Uncontroverted testimony shows that a trail of blood from the body of Milam led to where the body of Mary Bell Shaw was found. To require the prosecution and its witnesses to separate the victims places an impossible burden upon the state in reconstructing what occurred during the course of Mary Bell Shaw's murder.
Too, Shaw himself spoke of having killed two people in the calls he placed to the police. He cannot now contend that the two murders are separate and distinct and therefore prejudicial to his defense when he himself chose to include and refer to them as a single transaction. Further, the testimony of the dove hunters as to what Shaw told and showed them immediately following the murders confirms that the victims and circumstances surrounding their death could in no way be separated.
The trial judge made a valiant effort during the earlier stages of the trial to keep all testimony concerning the second dead body from the jury. In spite of his efforts, no plausible chain of events could be related to the jury with the exclusion of the killing of Milam. So finally the circuit judge relented and allowed the jury to hear all of the related events. We again hold that evidence of a second crime, when so closely related to the one being tried as to form one event, is admissible when necessary to give plausibility to the testimony presented to the jury.
We find no merit to this assigned error.

IV.
While the matter was pending in Neshoba County, before change of venue was granted, the defendant filed a motion to quash the indictment, assigning as the reason therefor that the witnesses before the grand jury were not listed on the indictment or otherwise made public. The defendant argues here that there was no showing that the witnesses were sworn or that any testimony was taken. A hearing was conducted and witnesses testified concerning the appearance of grand jury witnesses and the administration of the oath to them.
The appellant is unable to direct us to a statute that requires a listing of the witnesses on the indictment, but asserts that § 13-5-63 of the Mississippi Code Annotated and rule 2.01 of the Amended Uniform Criminal Rules of Circuit Court Practice[2] were not complied with. The transcript reveals otherwise. The list of witnesses was filed with the clerk, therefore, there was a return to the court.[3]
*920 This all occurred on September 25, 1985 in Neshoba County, the trial commenced on November 4, 1985. On September 25, 1985, the appellant was furnished a list of all the witnesses who appeared before the grand jury, the listing being taken from the grand jury docket. Prejudice, if any, was cured.
The attachment of the list to the indictments has been accepted as a matter of form in this state; and we encourage its continuance and do not desire this opinion to be construed as allowing a discontinuance of this practice. We find only that the requirements of § 13-5-63 and Rule 2.01 were met, and as such appellant's assigned error is without merit.

V.
Lastly, Shaw assigns as error admission of testimony concerning prior difficulties between appellant and his former wife. This admission of evidence occurred on several occasions during cross-examination of the defendant as well as during the testimony of the state's rebuttal witnesses, Janet Moulds and Sandra Shaw, daughters of the appellant and the deceased.
The gist of their testimony involves an argument which took place between appellant and Mary Bell Shaw, during which he threatened her with a knife. Also mentioned were allegations that Shaw had beaten Mary Bell Shaw and had threatened to kill her on several occasions.
It is appellant's contention that the effect of these uncharged instances of misconduct denied him a fair trial.
Threats made by the accused which are so remote as to have no evidentiary value are not admissible in a criminal prosecution. Steed v. State, 396 So.2d 625 (Miss. 1981). However, threats made by a defendant, even if uncommunicated, are admissible and relevant to show motive, malice, premeditation and criminal intent if they are not too remote. Steed, supra.
In the case sub judice, the threats apparently took place only about a month prior to the murder. Too, the testimony elicited in rebuttal was in response to appellant's denial of making any prior threats, and this testimony may be put on in an attempt to impeach appellant's prior inconsistent statement. See, Myers v. State, 353 So.2d 1364 (Miss. 1978). ("Admission of testimony in rebuttal rests largely on the discretion of the trial court and does not constitute reversible error in the absence of *921 showing of no opportunity was afforded appellant to reply by surrebuttal testimony."). The record reflects appellant was afforded an opportunity to respond to his daughters' statements by surrebuttal testimony, but declined to do so.
The record reflects as well that William Shaw waived his right against self-incrimination and took the stand for the purpose of showing that his former wife was killed in an apparent attempt by him to defend her from an unknown attacker. Thus we find that the state's soliciting testimony of prior difficulties is a perfectly legitimate means of revealing criminal intent in accordance with Steed, supra.
There being no merit to this proposition by appellant or to those previously assigned, we affirm the ruling of the lower court.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and DAN M. LEE, PRATHER, ROBERTSON, SULLIVAN and ANDERSON, JJ., concur.
NOTES
[1] This case was tried and decided in November, 1985, prior to the passage of the Mississippi Rules of Evidence.
[2] Section 13-5-63 provides in pertinent part:

The foreman of the grand jury shall have power to order subpoenas for all witnesses desired to be produced, and he shall also have power to swear all witnesses. A record shall be kept by the foreman and returned to court, certified and signed by the foreman, of the names of all witnesses sworn before the grand jury.
Rule 2.01 provides in pertinent part:
The foreman shall keep a record of the names of all witnesses sworn before the grand jury. This list of witnesses, certified and signed by the foreman, shall be returned to court.
[3] The testimony by assistant district attorney Jim Arnold, during the lower court's hearing on the motion to quash the indictment is relevant to showing compliance with § 13-5-63 and Rule 2.01. Arnold stated as follows:

BY THE COURT:
Q. Was the list, subject to this motion to quash, filed?
A. Your Honor, the list of the witnesses, made by the Clerks of the Grand Jury were filed and placed in the Grand Jury Docket, transcribed in there, and the list was placed in there. Also, we have the Foreman of the Grand Jury sign an oath stating that he swears everybody in before they testify, and he signed that and dated it. That was also made a part of the Grand Jury Docket record.
BY THE COURT:
Cross-Examine?
CROSS-EXAMINATION
BY MR. KILGORE:
Q. Was the list kept by the Foreman as the witnesses were sworn?
A. It was kept in his presence by the Clerks, under his direct supervision.
Q. Was this docket that you refer to, it includes all the minutes of the Grand Jury. Is that correct?
A. The Grand Jury does not keep the minutes. What they do keep is a list of the witnesses, and a list of the Defendants and their charges, and whether there was any disposition in the case, and what that disposition was, and what the vote was.
Q. Is that list filed with the Circuit Clerk?
A. Yes, sir.
Q. And, it's certified and signed to by the Grand Jury, the list of witnesses?
A. It's certified by the Foreman, and also the Clerks sign at the bottom.
Q. The Grand Jury Docket is not filed with the Court, though, is it?
A. Well, its filed with the Circuit Clerk. I consider the Circuit Clerk to be part of the Court of Neshoba County.
Q. But, it's not available for public inspection, is it?
A. The Grand Jury Docket is kept in the vault of the Circuit Clerk's office, and, of course, all the proceedings of the Grand Jury are confidential.
Q. So, it wouldn't be accessible to the Defense Counsel or to the general public?
A. In my opinion, if that's what you're asking for, it would have to be made available to you through Order of the Court.
Q. That's the only list of the witnesses that there is. Is that correct? There's no separate list filed anywhere?
A. No, sir.