# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00979-COA

**XTAVIER TERRY A/K/A BOO BOO**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                    **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2023 |
| TRIAL JUDGE: | HON. ALAN D. LANCASTER |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | A. E. (RUSTY) HARLOW JR. |
| | KATHI CHRESTMAN WILSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JULIANNE KAY BAILEY |
| DISTRICT ATTORNEY: | WILLIAM ADAM HOPPER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 03/04/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1. After one man punched a woman in the face and then immediately walked into a club, two other men kidnapped and sexually assaulted the woman for hours. The man who punched the woman was subsequently charged with kidnapping. After a jury trial was held, the man was found guilty.

¶2. On appeal, he claims that there were errors with the sufficiency and weight of the evidence, that the crimes of his co-defendants should have been excluded from evidence, and that he was entitled to a lesser-included-offense jury instruction.

## FACTS

¶3.    On the evening of October 4, 2019, Kelsey[1] accompanied her boyfriend to a dice and gambling club in Grenada County. Kelsey chose to remain in the car and sleep while her boyfriend went inside. Hours later, in the early morning hours of October 5, she was awoken abruptly when two men "snatched" her from her car.

¶4.    Kelsey tried to "fight and run around the car" away from the men. But her efforts were thwarted by a third man. Kelsey would later testify that the man "hit me in the eye and said, Shut the f*** up." The man hit Kelsey with such force that she "hit the ground," and then he walked away from her and went inside the club.

¶5.    The two men who originally pulled Kelsey from her car then proceeded to sexually assault and terrorize her for hours. Although they ultimately decided to let Kelsey go, the men threatened to kill her and her family if she told anyone about what had happened. Once she got to safety, Kelsey reported the attack to law enforcement officers.

¶6.    The third man who punched Kelsey in the face was identified as Xtavier Terry. Terry was indicted on one count of kidnapping.

**PROCEDURAL HISTORY**

¶7.    Prior to the start of trial, the defense made an ore tenus motion in limine. Because the indictment charged two other defendants in addition to Terry, the defense's motion focused on the exclusion of evidence pertaining to his co-defendants "other crimes or wrongs." Through counsel, Terry argued that because both co-defendants had "already entered guilty

---

[1] We decline to identify victims of sexual assault and instead use a pseudonym.

pleas in their cases" and since the discovery failed to provide a basis for the State to use such evidence as a permitted non-character purpose, it should be excluded.

¶8. In response, the State argued that Terry was "charged with aiding and abetting . . . the kidnapping," and "to be able to tell a complete story," the victim should be able to talk about "the whole time that she [was] actually kidnapped." Finding that evidence of the co-defendant's crimes carried out during the attack "clearly falls under . . . motive, intent, knowledge, . . . absence of mistake," the trial court denied the motion.

¶9. The State called two witnesses at trial: the victim and the deputy who took her statement. Kelsey testified first. Her testimony largely recounted the events that occurred after Terry punched her and returned to the club.

¶10. Kelsey told the jury that after the two men took turns sexually assaulting her, they drove around for hours "talking about killing me." She recounted how the men told her they would "burn me" and then "throw me in the Grenada Lake." Kelsey confirmed the men actually obtained a "gas jug" in which they intended to place her. She disclosed that the men sexually assaulted her again, but this time, one of them videotaped the attack as a means of blackmail. She testified that the men let her go shortly after because she had children.

¶11. The State then sought clarity regarding how Terry had helped the two men kidnap her, and Kelsey responded, "By hitting me in the face." Kelsey identified Terry in the courtroom and described what he was wearing.

¶12. The State called Tim Gholston next, a deputy with the Grenda County Sheriff's

3

Department. Deputy Gholston testified that "sometime around noon" on October 5, he received a call and was dispatched to an area around an apartment complex. Once he arrived, he disclosed that he made contact with Kelsey, who "was crying" and seemed jumpy. Deputy Gholston further recounted that Kelsey "had a bruise right up under her left eye . . . . And there was a red mark above her forehead. Along with that, her nose was red; and up under her neck, it was real red[.]" The State rested its case-in-chief.

¶13. The defense then moved for a directed verdict, arguing that the State "failed to make a prima facie case for kidnapping" because "[t]he State ha[d] not shown that there was a concerted plan [between] these three defendants to kidnap [Kelsey]." The defense further argued that the State failed to show Terry "restrained [Kelsey] or that he kept her from moving or going away or anywhere."

¶14. Countering the defense's argument, the State responded that Kelsey's testimony had shown "[b]ut for Xtavier Terry's action of punching her in the face, she would have been able to get to safety. But he punched her in the face, knocked her down, and that gave plenty of time . . . for [the co-defendants] to be able to grab her and seize her." Considering the evidence in the light most favorable to the State, the trial court denied the defense's motion for a directed verdict.

¶15. Ultimately, the jury found Terry guilty of kidnapping. He was sentenced to serve twenty-five years in the custody of the Mississippi Department of Corrections. The trial court denied his motion for judgment notwithstanding the verdict or a new trial. Terry then

4

appealed.

## DISCUSSION

¶16. On appeal, Terry raises five assignments of error. In his first three, Terry contends that the evidence was insufficient to support the conviction, that the verdict was against the overwhelming weight of the evidence, and that the trial court should have granted his motion for judgment notwithstanding the verdict. Because these arguments are interrelated, we address them together. Next, we address whether the trial court improperly allowed Kelsey to testify about what happened after Terry attacked her, and last, whether a lesser-included instruction was warranted. Finding no error, we affirm.

**I.      The evidence was sufficient to sustain the kidnapping conviction, and the verdict was not against the weight of the evidence.**

¶17. Terry first challenges the sufficiency and weight of the evidence as to his kidnapping conviction. He argues that "[t]his case lacks any evidence that [he] was involved in the kidnapping [of Kelsey], had any knowledge of the actions of [his co-defendants], or in any way assisted [his co-defendants] in their crimes." Terry further asserts that reversal of his conviction is warranted because to "allow the jury verdict to stand on the charge of kidnapping when the State failed to meet its burden of proof . . . specifically as to intent, has resulted in an unconscionable injustice to [him]."

¶18. "We review a challenge to 'the legal sufficiency of the evidence' de novo[.]" *Jones v. State*, 380 So. 3d 974, 980 (¶13) (Miss. Ct. App. 2024) (quoting *Johnson v. State*, 904 So. 2d 162, 166 (¶7) (Miss. 2005)). "When reviewing a challenge for sufficiency of the

5

evidence, this Court must determine whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Walker v. State*, 390 So. 3d 504, 507-08 (¶9) (Miss. 2024) (quoting *Eubanks v. State*, 341 So. 3d 896, 909-10 (¶41) (Miss. 2022)). To the extent Terry also challenges the denial of his motion for a directed verdict, it is subsumed within his challenge to the sufficiency of the evidence, as "[a]n appeal on the denial of a directed verdict tests the sufficiency of the evidence." *Barker v. State*, 826 So. 2d 103, 105 (¶8) (Miss. Ct. App. 2002).

¶19. This Court reviews a challenge to the weight of the evidence for an abuse of discretion. *Jones*, 380 So. 3d at 980 (¶14). "Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." *Walker*, 390 So. 3d at 508 (¶10) (quoting *Baker v. State*, 802 So. 2d 77, 81 (¶14) (Miss. 2001)).

¶20. Mississippi law is clear "that any person who is present at the commission of a criminal offense and aids, counsels, or encourages another in the commission of that offense is an 'aider and abettor' and is equally guilty with the principal offender." *Hamer v. State*, 364 So. 3d 901, 910 (¶36) (Miss. Ct. App. 2022) (quoting *Sneed v. State*, 31 So. 3d 33, 41 (¶24) (Miss. Ct. App. 2009)). Furthermore, "[k]idnap[p]ing is not a specific intent crime. Therefore, it is sufficient that the surrounding circumstances resulted in a way to effectively become a kidnap[p]ing as opposed to the actual intent to kidnap." *Burrell v. State*, 183 So.

6

3d 19, 23-24 (¶13) (Miss. 2015) (quoting *Milano v. State*, 790 So. 2d 179, 187 (¶32) (Miss. 2001)).

¶21. Terry contends that "the only evidence presented by the State that [he] had committed any crime was that he punched" the victim, and therefore the State "failed to show any intent . . . as to kidnapping . . . [or] that he aided or abetted [his co-defendants] in their crimes." But Terry is mistaken. As *Burrell* makes clear, "kidnapping is not a specific intent crime." *Id.* So the State was not required to prove Terry intended to kidnap Kelsey but, instead, that he aided his co-defendants when he "secretly confine[d] . . . forcibly seize[d] and confine[d]" her or caused her "to be confined or imprisoned against . . . her will." Miss. Code Ann. § 97-3-53 (Rev. 2014).

¶22. At trial, Kelsey testified that after two men snatched her from her car, she was "screaming" and "trying to run away" from them. While attempting to escape, Terry walked up to her, "hit [her] in the eye, and said, Shut the f*** up." Not only was Kelsey unsuccessful in getting away from her first two attackers, but she testified that she "hit the ground" after Terry's punch. And only after Terry hit her were his co-defendants able to continue their attack on Kelsey, resulting in her confinement and subsequent sexual assault. Indeed, when asked how Terry aided his co-defendants in her confinement, Kelsey responded, "By hitting me in the face."

¶23. The record reflects that Terry punched the victim in the face at a time when it was clear she was attempting to flee her attackers and that his actions directly prevented her from

7

doing so. Terry's punch generated the opportunity for his co-defendants to commit their later crimes against the victim. We find that a rational trier of fact could have found the evidence supported that Terry aided his co-defendants in secretly confining, forcibly seizing, or causing Kelsey to be confined or imprisoned against her will in violation of law. *See Graham v. State*, 185 So. 3d 992, 1004 (¶34) (Miss. 2016) (finding that the victim's testimony that she had been punched "supported [her] allegation of having been forcibly confined" in violation of Mississippi's kidnapping statute). Accordingly, we find that the proof was sufficient and that the verdict was not against the overwhelming weight of the evidence.

## II. The trial court did not abuse its discretion by allowing the victim's testimony concerning the crimes of Terry's co-defendants.

¶24. Terry next argues that the trial court erred by denying his motion in limine to exclude evidence relating to the crimes of his co-defendants. Specifically, he argues that by allowing the jury to hear testimony about his co-defendants' crimes, they were "inflamed" and "unable to separate the crimes committed by [him] and [his co-defendants]."

¶25. On appeal, Terry resumes an argument he made in the trial court that allowing the victim to testify about the crimes of his co-defendants was a violation of Mississippi Rule of Evidence 404(b)(1). He argues in part that "the evidence of the co-defendants['] crimes in no way proved motive, opportunity, intent, plan, preparation, identity, or absence of mistake or accident, but did manage to unfairly prejudice the jury against [him]."

¶26. "This Court reviews the trial court's decision to admit or exclude evidence under an

abuse of discretion standard of review." *Randall v. State*, 395 So. 3d 458, 462 (¶17) (Miss. Ct. App. 2024) (citing *Deeds v. State*, 27 So. 3d 1135, 1140-41 (¶15) (Miss. 2009)). "[T]his Court will not reverse a trial judge's decision on the admissibility of testimony offered at trial unless prejudice amounting to reversible error resulted from such a decision." *Dukes v. State*, 369 So. 3d 553, 558 (¶13) (Miss. 2023) (citing *Bishop v. State*, 982 So. 2d 371, 375 (¶15) (Miss. 2008)).

¶27. Generally, "[e]vidence of a crime, wrong, or other act is not admissible to prove a *person's character* . . . to show that on a particular occasion *the person* acted in accordance with the character." MRE 404(b)(1) (emphasis added). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).

¶28. But our law recognizes other exceptions to the otherwise general prohibition under Rule 404(b)(1). *Neal v. State*, 451 So. 2d 743, 759 (Miss. 1984). "Proof of another crime is admissible where the offense charged and that offered to be proved are so interrelated as to constitute a single transaction or occurrence or a closely related series of transactions or occurrences." *Id.*; *see also Bruce v. State*, 35 So. 3d 1236, 1239 (¶12) (Miss. Ct. App. 2010) (allowing evidence "if it sheds light upon the motive or if it forms a part of a chain of facts intimately connected so that in order to interpret its general parts, the whole must be heard" (internal quotation marks omitted)). Crucially, "the state has a legitimate interest in telling a rational and coherent story of what happened." *Hodges v. State*, 912 So. 2d 730, 780

9

(¶120) (Miss. 2005) (quoting *Shaw v. State*, 513 So. 2d 916, 919 (Miss.1987)).

¶29.  "[R]egardless of its origin, before a [trial court] admits other-acts evidence, it must be filtered through Mississippi Rule of Evidence 403." *Bowman v. State*, 283 So. 3d 154, 165 (¶39) (Miss. 2019).  "Under Rule 403, when weighing admission of relevant evidence, a trial judge *may* exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice." *Id.* (emphasis added) (alterations omitted).  "The weighing and balancing task required by Rule 403 asks only that a judge rely on his/her own sound judgment." *Masters v. State*, 285 So. 3d 192, 197 (¶16) (Miss. Ct. App. 2019) (quoting *O'Connor v. State*, 120 So. 3d 390, 398 (¶20) (Miss. 2013)).

¶30.  First, we note that Terry's argument does not fit squarely within the confines of Rule 404(b)(1).  The plain text of the Rule specifies that the prohibited uses of an individual's "crimes, wrongs, or other acts" for purposes of proving character are confined to the acts of *that individual*, not others.  Therefore, the crimes Terry's co-defendants later committed that same night could not, as a matter of law, have been admitted to prove Terry's character or show that he acted in accordance with that character.

¶31.  Terry argues that "[t]he jury should have only been allowed to hear the evidence related to the crimes committed by [him]" and that "there was no basis to allow the jury to hear about the . . . other crimes committed by [his co-defendants]."  In essence though, Terry protests that the complete picture *of what his actions ultimately precipitated* is irrelevant and unfairly prejudiced him.  Yet as detailed above, "but for" Terry's unprompted attack on the

victim, she would have been able to escape the restraint by his co-defendants. The victim's horrific confinement and resulting sexual assault were a direct result of Terry's actions.

¶32. Kelsey's testimony regarding the crimes of Terry's co-defendants was admissible because their crimes were "integrally related in time, place and fact" with Terry aiding in her kidnapping, and "[t]he two offenses arose out of a common nucleus of operative facts." *Wheeler v. State*, 536 So. 2d 1347, 1352 (Miss. 1988). Further, and in line with *Bruce* and *Hodges*, Kelsey's testimony allowed the State to "tell a rational and coherent story of what happened" to her, and "it forms a part of a chain of facts intimately connected . . . that in order to interpret its general parts, the whole must be heard."

¶33. Exercising its sound judgment, the trial court found that the crimes of Terry's co-defendant's "clearly f[e]ll[] under. . . motive, intent, knowledge . . . absence of mistake," all of which are permissive uses under Rule 404(b)(2). Therefore, we find no abuse of discretion in the admission of Kelsey's testimony regarding Terry's co-defendants.

### III. The simple assault instruction was properly rejected.

¶34. Lastly, Terry argues that the trial court erred by refusing to give the jury his requested instruction. Specifically, Terry contends that he "should have been allowed to give jury instruction D-5 on simple assault" because "[t]he jury could have inferred from the evidence that [he] was guilty of the less[e]r included offense of simple assault."

¶35. "We review a trial judge's denial of a lesser-included-offense jury instruction de novo." *Gilmore v. State*, 119 So. 3d 278, 286 (¶13) (Miss. 2013). "A defendant has an

11

'absolute right' to a jury instruction for a lesser-included offense if the evidence supports such an instruction." *Brown v. State*, 285 So. 3d 671, 676 (¶12) (Miss. Ct. App. 2019). "[A] lesser-included offense is one in which all the essential ingredients are contained in the offense for which the accused is indicted[.]" *Eubanks*, 341 So. 3d at 913 (¶62) (quoting *Downs v. State*, 962 So. 2d 1255, 1261 (¶23) (Miss. 2007)). To receive a lesser-included offense instruction, "a defendant must point to some evidence in the record from which a jury reasonably could find him not guilty of the crime with which he was charged and at the same time find him guilty of a lesser-included offense." *Anderson v. State*, 361 So. 3d 609, 614 (¶13) (Miss. 2023) (quoting *Gilmore*, 119 So. 3d at 286 (¶13)).

¶36. Therefore, because "[t]he lesser included crime is *encompassed within* the crime for which the accused is indicted[,]" it follows then that the "accused [cannot] be guilty of the offense for which he is indicted without at the same time being guilty of the lesser included offense." *Gause v. State*, 65 So. 3d 295, 300 (¶14) (Miss. 2011) (emphasis added) (quoting *State v. Shaw*, 880 So. 2d 296, 301 (¶18) (Miss. 2004)). But the inverse is not true, as "a criminal defendant no longer has the unilateral right under Mississippi law to insist upon an instruction for lesser-related offenses which are not necessarily included in the charged offense(s), i.e., so-called lesser-nonincluded-offense instructions." *Hye v. State*, 162 So. 3d 750, 751 (¶2) (Miss. 2015).

¶37. Terry was charged with violating Mississippi's kidnapping statute. His indictment states he "did willfully, unlawfully, feloniously, and purposely or knowingly . . . with or

without the intent to secretly confine, . . . forcibly seize and confine [Kelsey], or . . . otherwise inveigle or kidnap [Kelsey] with the intent to cause . . . [Kelsey] to be confined or imprisoned against her will in violation of Section 97-3-53 of the Mississippi Code." Under Mississippi law, "[a]ny person who . . . with or without intent to secretly confine . . . forcibly seize[s] and confine[s] any other person, or . . . inveigle[s] or kidnap[s] any other person with intent to cause such person to be confined or imprisoned against his or her will" is guilty of kidnapping. Miss. Code Ann. § 97-3-53.

¶38. But the law governing Terry's requested instruction for simple assault maintains that "[a] person is guilty of simple assault if he or she (i) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; (ii) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) attempts by physical menace to put another in fear of imminent serious bodily harm[.]" Miss. Code Ann. § 97-3-7(1)(a) (Rev. 2020).

¶39. Terry's assertion that "[t]he jury could have inferred from the evidence that [he] was guilty of the less[e]r included offense of simple assault" is misplaced. Kidnapping focuses on confinement of the victim against the person's will. In contrast, simple assault focuses on bodily injury to the victim. A plain reading of both statutes reveals that simple assault is not "encompassed within" the crime of kidnapping, as Terry could "be guilty of [kidnapping] without at the same time being guilty of [simple assault]." *Gause*, 65 So. 3d at 300 (¶14). In this situation, the type of instruction that Terry requested was a lesser-*non*included-offense

13

instruction, which our Supreme Court has expressly held criminal defendants no longer have a right to insist upon. *See Hye*, 162 So. 3d at 751 (¶2).

¶40. Simple assault is not a lesser-included offense of kidnapping, as the elements of simple assault are not among the elements of kidnapping. *Cf. Busby v. State*, 956 So. 2d 1112, 1115 (¶11) (Miss. Ct. App. 2007) (finding "domestic violence is not a lesser-included offense of kidnapping, as the elements of domestic violence are not among the elements of kidnapping"). As in *Busby*, "the two are independent crimes with distinct elements." *Id.* Therefore, Terry was not entitled to his requested instruction, and it was properly rejected.

## CONCLUSION

¶41. Having reviewed the arguments of Terry and the State and the record and transcript, we find there was sufficient proof that he kidnapped the victim in this case, the verdict was not against the overwhelming weight of the evidence, the victim's testimony was admissible to tell a completely story of what happened, and no lesser-included-offense instruction was warranted. Therefore, Terry's conviction and sentence are **AFFIRMED**.

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, McDONALD, LAWRENCE, EMFINGER, WEDDLE AND ST. PÉ, JJ., CONCUR.**