362 So.2d 634 (1978)
Kurt F. PARR
v.
STATE of Mississippi.
No. 50711.
Supreme Court of Mississippi.
September 13, 1978.
Ralph W. Pringle, T. Larry Wilson, Pascagoula, for appellant.
A.F. Summer, Atty. Gen. by Billy L. Gore, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, C.J., and BROOM and LEE, JJ.
LEE, Justice, for the Court:
Kurt F. Parr was indicted, tried and convicted in the Circuit Court of Jackson County for the murder of his wife, and sentenced to life in custody of the State Department of Corrections. He appeals to this Court and assigns the following errors in the trial below:
*635 (1) The court erred in admitting into evidence prior threats which were too remote in time to the alleged incident.
(2) The court erred in improperly instructing the jury.
(3) The verdict was against the overwhelming weight of the evidence.
(4) The court erred in overruling a motion for new trial.
On the morning of February 20, 1977, the body of Eva Parr was found lying in a wooded area approximately one hundred (100) feet from a rural Jackson County road. Near the body was the deceased's automobile, which contained personal articles belonging to her. A tire on the automobile had been cut and the appearance at the scene was that someone had robbed and slain the deceased.
An autopsy on the body disclosed that there was a bruise on top of the head, another in the temporal area of the head and a third on the shoulder. The cause of death was determined to be a subdural hematoma.
Appellant, after having been advised of his Miranda rights, made a statement to investigating officers about Mrs. Parr's death, and he testified at the trial of the case. He said that he came home about 6:30 p.m., Mrs. Parr was in the bed, an argument ensued between them, he choked her, and she fell off the bed, striking her head on the floor, which fall resulted in her death. Appellant was the only person present at the time. He called some friends and told them about the incident, then, after advising with them, he dressed the deceased in her nurse's uniform, put her in the car, and drove to the spot where her body was found later. Appellant removed the body from the car, cut a tire, disarranged articles in the car to leave the appearance of a robbery, and was taken back to his home by the friend, who had followed him. After leaving the place where he had deposited his wife's body, appellant threw his gloves and shoes from a bridge into a bayou. Prior to his arrest, he contacted the pathologist and ascertained that the cause of death was a subdural hematoma.
The record reflects that on several occasions prior to the death of Mrs. Parr, appellant had made threats to kill her.

I.
Did the trial court err in admitting into evidence prior threats which were too remote in time to the alleged incident?
The State introduced in evidence threats against deceased that were made by appellant four and one-half (4 1/2) to six and one-half (6 1/2) months and thirteen (13) months and six (6) months prior to her death.
Appellant contends that the threats were not competent because they were too remote and he relies on Myers v. State, 167 Miss. 76, 147 So. 308 (1933), which involved a threat by the accused made over eight (8) months prior to the victim's death and which held that the trial court did not err in excluding the threat on the ground of remoteness. He also cites Stewart v. State, 226 So.2d 911 (Miss. 1969), wherein the trial court was held not to have erred in excluding evidence of previous threats made by the prosecuting witness toward the defendant, which occurred six (6) months before the shooting.
In Carroll v. State, 196 So.2d 878 (Miss. 1967), this Court held that evidence of statements made years before the incident were admissible where there had been a statement reviving the old threats at the time of the incident. The Court said:
"In the case now before this Court, it is conceded by appellant that it was he who introduced the subject of the beating administered to his father by Drewery some ten years previously, and that this remark brought on the fatal quarrel. There is also testimony that immediately following the homicide, appellant stated that he had promised his father that he would `get' Drewery for that old affront and injury and that in killing Drewery he had done it. It is also clearly in evidence that Drewery's response to appellant was that he thought that the old incident was over and forgotten, and it was appellant *636 who replied then that he hadn't forgotten it.
Under the circumstances in evidence, the jury was warranted in finding, and apparently did find, that the bitter memory of this old quarrel, when Drewery had beaten his father, years ago, had continued to smoulder in the mind of appellant for the ten years intervening and that this threat, uttered against Drewery and testified to by Robertson, was an expression of his long entertained animosity toward Drewery and of his intention eventually to `settle the score' and to `get' him for it. These facts distinguish this case from Macmasters (McMasters) [v. State, 81 Miss. 374, 33 So. 2], supra, and Myers [v. State, 167 Miss. 76, 147 So. 308], supra. A threat may be too remote in the absence of proof of a connection between the threat and the underlying cause of the fatal quarrel. Here, by appellant's own admission, he had not forgotten the old quarrel, although a long time had elapsed, and there was evidence that he said he had promised his father that he was going to get Drewery on account of it. The final difficulty, which led to the killing of Drewery by appellant, was brought on wilfully and directly by appellant in renewing the old quarrel. These circumstances warranted the jury in connecting the threat with the killing and in finding that the homicide was the result of appellant's long-held grudge and of his intention eventually to `get' Drewery.
The threat sheds light upon appellant's motive in shooting Drewery; it discloses his state of mind toward him, and is a circumstance which the jury might properly have considered in determining whether there was premeditation and in deciding who the aggressor was." 196 So.2d at 881.
The record indicates that for a period before the threats were made up until the date of the homicide, there was hostility, bitterness, and ill will between the appellant and his wife. Such a situation rendered the threats relevant and competent.
Grooms v. State, 357 So.2d 292 (Miss. 1978), stated the rule for admissibility of threats as follows:
"We have held in several cases that threats made by an accused to kill the deceased uncommunicated to the deceased are admissible in evidence. These threats show malice, premeditation or criminal intent. Herron v. State, Miss., 287 So.2d 759, cert. denied 417 U.S. 972, 94 S.Ct. 3179, 41 L.Ed.2d 1144 (1974); Ladner v. State, 197 So.2d 257 (Miss. 1967); Lambert v. State, 171 Miss. 474, 158 So. 139 (1934); Myers v. State, 167 Miss. 76, 147 So. 308 (1933). We further have held that should the alleged threat be so remote as to be of no evidentiary value it should not be admissible. Myers v. State, supra. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), we held that the trial judge did not abuse his discretion in allowing evidence of a conditional threat made by the accused two months before the killing of the deceased. Whether or not a threat is too remote to be admissible is a question addressed to the sound discretion of the trial judge. We hold that the lower court was completely within its discretion in holding that the alleged threat made in the presence of witness Crystal Smith was admissible." 357 So.2d at 295-296.
We are of the opinion that the trial court did not abuse its discretion in admitting the threats in evidence.

II.
Did the trial court err in improperly instructing the jury and in declining to grant a manslaughter instruction?
After the jury had deliberated for three (3) hours without reaching a verdict, the trial judge gave the following instruction:
"I know that it is possible for honest men and women to have honest different opinions about the facts of a case, but, if it is possible to reconcile your differences of opinion and decide this case, then you should do so.
Accordingly, I remind you that the court originally instructed you that the *637 verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching agreement if you can do so without violence to your individual judgment. Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you are convinced it is erroneous, but do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations."
The above instruction was drawn by this Court and was intended as a model instruction to be given by the trial court when a jury is unable to arrive at a verdict. In Sharplin v. State, 330 So.2d 591 (Miss. 1976), the Court said:
"We approve the foregoing instruction. It may be given in either criminal or civil cases when the trial judge is confronted by a hung jury. Following publication of this opinion the `Allen Charge' in any of its various forms should not be given. See Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896)." 330 So.2d at 596.
Appellant also complains that the court should have granted a manslaughter instruction and relies upon Wells v. State, 305 So.2d 333 (Miss. 1974), which held that there was no evidence to support a murder charge. However, when the threats, the statement, the testimony of appellant, and others, and the conduct of appellant following the death of deceased are considered together, the evidence supports the charge of murder.
Moreover, appellant did not request a manslaughter instruction but urges the Court to hold that such instruction should have been granted without a request therefor. We held in Newell v. State, 308 So.2d 71, 78 (Miss. 1975), that the trial judge shall not be put in error for his failure to instruct on any point of law unless specifically requested in writing to do so. Consequently, there is no merit in this assignment of error.

III.
Was the verdict against the overwhelming weight of the evidence?

IV.
Did the trial court err in overruling a motion for a new trial?
Although appellant did not assign as error refusal of the trial court to grant him a peremptory instruction, he argues that under the Weathersby rule[1] he should be granted a new trial on the ground that the verdict was against the overwhelming weight of the evidence. Suffice it to say, the facts stated hereinabove and the discussion under Assignment of Error No. II sufficiently answer these assigned errors. The evidence, together with reasonable inferences, presented a question of appellant's guilt for the jury to determine, and the guilty verdict is amply supported by the evidence.
There being no reversible error in the trial below, the judgment is affirmed.
AFFIRMED.
PATTERSON, C.J., SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, BOWLING and COFER, JJ., concur.
NOTES
[1] Weathersby v. State, 165 Miss. 207, 147 So. 481 (1933).