661 So.2d 1139 (1995)
Howard Ray TILLIS
v.
STATE of Mississippi.
No. 93-KA-00029-SCT.
Supreme Court of Mississippi.
September 28, 1995.
*1140 Thomas D. Lee, Lee & Lee, Forest, for Appellant.
Michael C. Moore, Attorney General, Jackson, Wayne Snuggs, Assistant Attorney General, Jackson, for Appellee.

ON PETITION FOR REHEARING
SMITH, Justice, for the Court:
Petition for rehearing granted. Original opinions are withdrawn and these opinions substituted therefore.
Howard Ray Tillis was arrested and charged with selling a controlled substance to an undercover agent on October 25, 1991. Tillis was tried by jury in the Circuit Court of Scott County, Mississippi, and found guilty and sentenced to thirteen years in the custody of the Mississippi Department of Corrections. Aggrieved, Tillis appealed to this Court and asserted the following issue:
THE LOWER COURT ERRED IN EXCLUDING EVIDENCE BY THE APPELLANT TILLIS THAT THE STATE'S WITNESS WAS BIASED AND PREJUDICED AGAINST TILLIS.
After thoroughly reviewing the record in this case, we find no merit to the argument raised by Tillis. The trial judge did not abuse his discretion in citing remoteness as the basis for denying Tillis' proffered evidence concerning a fight that occurred sometime in the 1970's between Tillis and Eddie Floyd, the confidential informant. We must affirm the trial court.

FACTS
On October 25, 1991, Michael Wallace, a Yazoo City police officer, on special assignment with the Bureau of Narcotics, and Eddie Floyd, a confidential informant, proceeded to Morton, Mississippi, to buy crack cocaine. After Wallace and Floyd arrived in Morton, Wallace bought three rocks of crack *1141 cocaine from a person identified by Floyd as the defendant, Tillis.
On June 11, 1992, Tillis was indicted by the grand jury of Scott County for the sale of the cocaine in violation of section 41-29-139(a)(1) of the Mississippi Code Annotated. During discovery, Tillis filed a motion to disclose the name of the confidential informer.
At trial, the state presented Wallace, who positively identified Tillis as the man who sold the cocaine to Wallace. Floyd also identified Tillis as the person who sold the cocaine to Wallace on October 25, 1991. During cross-examination, Floyd was asked what happened between him and Tillis "back in the late seventies when you got his wallet." The State objected on the grounds of remoteness and the jury was excused.
Outside the presence of the jury, Floyd testified that "in the early seventies" he and Tillis fought over a basketball, not a wallet, and that he was hit in the head with a tree limb which resulted in an injury requiring stitches. Floyd further testified that since the incident, although he and Tillis had not been close friends or enemies, there had not been any trouble or other conflicts between them. Floyd stated that Tillis had even brought some firewood for him and that they had conversations since the incident. They had lived in the same community, one street apart for nineteen years, with Floyd only moving during the last year preceding the trial. Floyd denied ever threatening to "get" Tillis. The proffer did not include any testimony of Tillis.
After Tillis' proffer, the trial judge stated inter alia "I can't see where something that happened twenty years ago should be admitted in this case as an impeachment of this testimony. So, on the basis of remoteness, I am going to sustain the objection."
Later in the trial, defense counsel renewed his efforts to impeach Floyd by stating that if the defendant, Tillis, were permitted to testify about the fight, he would testify that the fight occurred in the late seventies and that since that time there had been no contact between the two of them. Again the trial court ruled to exclude the proffered evidence on the ground that it was too remote.
Gail Benson, agent with the Bureau of Narcotics, testified that she was the surveilling agent on October 25, 1991 during the incident in question. Benson and MBN agent Faron Gardner followed close behind and listened to the cocaine sale over a radio transmitted "body wire" concealed on Mike Wallace. Benson heard who Wallace described as a black male ask Wallace, "Are you the man?" to which Wallace replied, "No, man." Benson described the cocaine sale that occurred at that time.
Tillis testified that he did not sell cocaine to Wallace on October 25, 1991. Tillis claimed mistaken identity regarding the drug sale. He maintained that he was cutting pulpwood on the date in question and was probably around the woodyard up until 4:55 p.m. on that day. He introduced into evidence load receipts from the woodyard confirming his pulpwood loads hauled on October 25th.
At the close of trial, the jury returned a verdict of guilty. Tillis was sentenced to serve thirteen years in the custody of the Mississippi Department of Corrections, and to pay a $5,000.00 fine. Upon payment of the fine, three years of the sentence would be suspended, and Tillis would be placed on probation for five years.

DISCUSSION OF LAW
The issue of "remoteness" centers around the proffered testimony of Eddie Floyd and a limited statement by Tillis' counsel as to what Tillis would have testified had he been permitted to by the trial court. Tillis' proffer of Floyd's testimony indicates the following:
Q. You haven't made remarks to folks that you was going to get him?
A. No, sir.
Q. But, y'all haven't been since this incident happened and he hit you with a tree limb, you just kind of have gone your separate ways and he has gone his; have you?
A. Yeah, I have. I know him. We haven't had no  he got some wood for me. I had him get some wood for me, some firewood.

*1142 Q. Well, the relationship between you and Howard all these years is y'all just kind of look at each other, and that's about it; isn't it?
A. No, we have talked. You know, we haven't been no enemies. We haven't been no close friends, but we haven't been no enemy.
The trial judge questioned Floyd during the proffered testimony offered by Tillis as follows:
Q. Eddie Lee Floyd, let me ask you a question. Where do you live? Where have you lived since this problem you had with Tillis in the 1970's?
A. See, at that time, both of us stayed in the same community just one street over from each other.
Q. At that time; but, where have you lived since then?
A. I moved out of that area last year; but, at that time, I stayed in that area until that time.
Q. Have you had any conflicts with him since then, any violent conflicts?
A. No sir.
The trial court ruled that the 1970's fight was too remote to be allowed for impeachment purposes on cross-examination. The court found that the event occurred some twenty years earlier and that both men had lived in the same neighborhood for nineteen years, without any physical confrontations or any problems whatsoever.
This Court has held that the trial court is generally allowed wide discretion concerning the admission of evidence offered to suggest bias on the part of a witness against the defendant. This Court, when reviewing a trial court ruling on this issue, does so applying the standard of clear abuse of discretion. Miskelley v. State, 480 So.2d 1104, 1111-12 (Miss. 1985). A review of this entire proceeding reveals that we would be hard pressed to find that the trial judge in the case sub judice clearly abused his discretion in sustaining the State's objection to the testimony which, in the trial judge's opinion was absolutely too remote to be admissible.
Rule 616 of the Mississippi Rules of Evidence, although not cited by Tillis, nevertheless applies. Rule 616 is a codification of the common law relating to impeachment of witness credibility by showing bias, prejudice or interest of the witness for or against any party to the case. Comment M.R.E. 616. Rule 616 must be interpreted as it relates to other rules of evidence, particularly M.R.E. 104, 401 and 402. Rule 616 states the general rule of admissibility of such evidence subject to the trial court finding, in the exercise of its discretion under M.R.E. 104, that it is relevant, under M.R.E. 401 and 402, to the specific facts in the case.
The rules as originally promulgated did not contain a rule permitting examination of a witness for bias or prejudice. Rule 616 was added as a result of the United States Supreme Court's decision in United States v. Abel, 469 U.S. 45, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Abel reaffirmed the longstanding common law practice of allowing impeachment by bias, prejudice or interest, despite the fact that the Federal Rules of Evidence, like the original Mississippi Rules, did not contain a specific rule allowing such impeachment. The Supreme Court concluded that such evidence would be admissible under F.R.E. 402, if it met the definition of relevant evidence under F.R.E. 401. The comment to M.R.E. 616 clearly states that it was intended to codify the common law rule as recognized and reaffirmed in Abel. It is thus clear from the rationale of Abel, that before the specific evidence that is offered under the specific circumstances of the case in which it is offered is admissible, it must meet the definition of relevant evidence under M.R.E. 401. It must have the tendency, in the case being tried, to make the facts to which the witness testified less probable than it would be without the evidence of bias. Thus, evidence of bias, or any other evidence that is remote, is a function of relevancy. Evidence can be remote, either in time or because it is far-removed from an issue in the trial.
Accordingly, the general rule is certainly not without its limitations. The situation in the case sub judice appears to be one of the times to allow application of the limitations of Rule 616. Evidence that is remote in *1143 time or is otherwise far-removed from an issue at trial is not relevant under M.R.E. 401 and may be excluded by the trial court in the exercise of discretion. This Court, in Cantrell v. State, 507 So.2d 325, 330 (Miss. 1987) held:
As stated in Wigmore on Evidence § 949 (Chadbourn rev. 1970):
The range of external circumstances from which probable bias may be inferred is infinite... . Exact concrete rules are almost impossible to formulate and where possible are usually undesirable. In general, these circumstances should have some clearly apparent force, as tested by experience of human nature, or, as it is usually put they not be too remote.
(Emphasis added).
It is apparent that courts in other states are in agreement with this view. See People v. Hernandez, 163 A.D.2d 159, 558 N.Y.S.2d 32, 33 (1990) ("while hostility of the witness towards the party he is testifying against is relevant to his credibility, a court may properly limit the introduction of such evidence where it is too remote"); Travelers Ins. Co. v. Dunn, 383 S.W.2d 197, 199 (Tex.Civ.App. 1964), ("discretion of the trial court to exclude evidence of conviction of a crime nine years previously as too remote"); Landry v. Travelers Insurance Co., 458 S.W.2d 649, 651 (1970), (holding that the "trial court's exclusion of evidence that, five years and one month prior to trial, employee who testified concerning his accident and resultant injuries had been convicted of a felony involving moral turpitude on the ground that the conviction was too remote was within its discretion"); State v. Benn, 120 Wash.2d 631, 845 P.2d 289, 301 (1993), ("[t]rial courts have discretion to determine the scope of cross examination and to prohibit further questioning where the claimed bias is speculative or remote"). See also, State v. Young, 89 Wash.2d 613, 574 P.2d 1171 (1978), cert denied, 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978); People v. Thomas, 46 N.Y.2d 100, 412 N.Y.S.2d 845, 847, 385 N.E.2d 584, 586 (1978).
Returning to the case at bar, Tillis argues as his sole authority that the homicide cases of Carroll v. State, 196 So.2d 878 (Miss. 1967), Parr v. State, 362 So.2d 634 (Miss. 1978), and Myers v. State, 167 Miss. 76, 147 So. 308 (1933), all of which pertain to the admissibility of prior threats by a victim against the defendant, support his position.
However, these cases are persuasively analogous to the issue at bar since they clearly hold that the admissibility of evidence of prior threats is left to the sound discretion of the trial court and that there must be evidence of a causal relationship between the threat and the purpose for which it is offered. Thus, Tillis' cited cases are of greater benefit to the State than Tillis.
In two of these cases, the threats of homicide were much closer in time to the actual offense than in the case sub judice. In Carroll, two years elapsed between the threat and the homicide. In Parr there were four threats ranging from four and one half months to thirteen months before the homicide. Also, in Myers, which involved an eight to nine month old threat, this Court held the trial court did not abuse its discretion in excluding such evidence because there was no evidence that the threat by the deceased to kill the defendant and the ultimate homicide were connected.
In Stewart v. State, 226 So.2d 911 (Miss. 1969) this Court held:
Since the case is to be tried anew, a brief comment on other assignments of error is appropriate. The circuit court did not err in excluding evidence of previous threats and provocations by the prosecuting witness toward the appellant, which occurred six months before the shooting. The court's reason for the exclusion was that the prior difficulty was too remote in time. The determination of whether evidence is too remote to be relevant is ordinarily left to the discretion of the trial judge, and his decision will not be reversed in the absence of a clear proof of abuse of that discretion. R. Anderson, Wharton's Criminal Evidence, § 149 (12th ed. 1955). We cannot say that there was an abuse of discretion in this instance.
Stewart, 226 So.2d at 912. (emphasis added).
In Wilkins v. State, 264 So.2d 411 (Miss. 1972), this Court held that "evidence as to *1144 the condition of the scene of crime and objects found at scene, if relevant, are admissible in evidence, if not remote in time and place." Id. at 413 (citing 22A C.J.S. Criminal Law § 617, p. 433 (1961) (emphasis added).
This Court's most recent pronouncement concerning "remoteness" and the admissibility of evidence was discussed in May v. State, 524 So.2d 957 (Miss. 1988). This Court, acknowledging pre-rule authority held:
Sensing the harmlessness of Mrs. Hunt's testimony, Mrs. May argues it was error to allow all the other testimony concerning her prior attempts to kill her husband. She cites no authority to support her additional claim of remoteness; however, some pre-Rules precedent might support her claim.

Steed v. State, 396 So.2d 625, 627 (Miss. 1981), and Grooms v. State, 357 So.2d 292, 295-96 (Miss. 1978), both dealt with remoteness of threats made by a defendant about a victim, uncommunicated to the deceased. In both of those cases the Court intimated that threats made within two months of the killing were not too remote. In Parr v. State, 362 So.2d 634, 636 (Miss. 1978), the Court approved of admitting evidence of threats made as much as 13 months before the killing. However, in that case the Court noted, "The record indicates that for a period before the threats were made up until the date of the homicide, there was hostility, bitterness, and ill will between appellant and his wife [the deceased]. Such a situation rendered the threats relevant and competent."
Thus, this Court's pre-Rule precedent seems to hold that threats made within two months of the killing are not too remote, and threats more remote may be admissible where there are linking contemporaneous threats as in Parr. On the other hand, the Court noted in Steed, Grooms and Parr that whether a threat is too remote is a question addressed to the sound discretion of the trial judge. Steed, 396 So.2d at 627.
May, 524 So.2d at 965 (emphasis added).
The May Court also stated that the "new Rules of Evidence may incorporate our pre-Rules precedent to some extent." May, 524 So.2d at 965. In considering the question of remoteness of prior threats made ten months prior to the murder, and holding the trial court did not abuse its discretion, the Court stated:
Here the question of remoteness may reenter the analysis as a question of relevancy. However, Rule 401 defines relevant evidence very broadly, and it would seem that evidence of threats made in early 1984, some 10 months before the murder, would have a tendency to "make the existence of any fact that is of consequence to the determination of the action more probable or less probable," especially in a circumstantial evidence case. The Court would thus again be faced with the question of whether the trial judge abused his discretion in admitting the testimony under Rule 403.
May, 524 So.2d. at 965
An analysis of all authority reviewed indicates that whether the complained of threat took place twelve years prior to the sale of the cocaine by Tillis, as defense counsel argues, or twenty years, as the trial court concluded, we cannot fault the trial court decision, finding in its discretion that the evidence was not admissible due to "remoteness." This is especially applicable when, as in Myers, there was no proffered evidence that the prior difficulties between Tillis and Floyd were connected to the sale of the cocaine by Tillis to agent Wallace. There is no merit to this issue.

CONCLUSION
Whether it occurred twelve or twenty years before the sale of crack cocaine by Tillis to Agent Wallace, the fight between Tillis and Floyd was too remote under the facts presented to be admissible. This Court cannot say with any degree of confidence that the trial court abused its discretion. The exception to the general rule applies to the case sub judice. The rationale of Abel applies also. We continue to adhere to Stewart, Myers, Wilkins and May. There is no merit to the issue raised by Tillis. We must *1145 affirm Tillis' conviction and sentence for sale of cocaine.
CONVICTION OF SALE OF COCAINE AND SENTENCE OF THIRTEEN YEARS IN THE CUSTODY OF MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAYMENT OF A FINE OF $5,000.00 WITH CONDITIONS AFFIRMED.
PRATHER, P.J., and SULLIVAN, PITTMAN and JAMES L. ROBERTS, Jr., JJ., concur.
DAN M. LEE, P.J., dissents with separate written opinion joined by HAWKINS, C.J., and BANKS and McRAE, JJ.
DAN M. LEE, Presiding Justice, dissenting:
Today this Court is erroneously affirming the conviction of Howard Ray Tillis by failing to find that the lower court abused its discretion when it prohibited the defendant from introducing evidence properly admissible under the Mississippi Rules of Evidence. Because I believe the excluded evidence was relevant and proper for use in cross-examination to attack the credibility of Eddie Floyd (the confidential informant) and to show possible animosities on the part of Eddie Floyd against Howard Ray Tillis, I respectfully dissent.

I.
Howard Ray Tillis ("Tillis") was arrested and charged with selling a controlled substance to an undercover agent on October 25, 1991. Tillis was tried by jury in the Circuit Court of Scott County, Mississippi, was found guilty and sentenced to thirteen (13) years in the custody of the Mississippi Department of Corrections. Aggrieved by his conviction, Tillis appealed to this Court and asserted the following issue:
THE LOWER COURT ERRED IN EXCLUDING EVIDENCE BY THE APPELLANT TILLIS THAT THE STATE'S WITNESS WAS BIASED AND PREJUDICED AGAINST TILLIS.
After a review of the record and briefs in this case, I believe the lower court erred in excluding, as too remote, evidence which would have shown that the state's witness was biased or prejudiced toward the defendant; evidence which would have shown that the state's witness possibly harbored animosities toward the defendant and evidence which would have shown that the defendant would not have sold drugs to a third party introduced to him by this particular witness. I, therefore, would reverse appellant's conviction for the sale of a controlled substance and remand to the Circuit Court of Scott County for proceedings consistent with this opinion.

II.
On October 25, 1991, Michael Wallace ("Wallace"), a Yazoo City police officer on special assignment with the Bureau of Narcotics, and Eddie Floyd ("Floyd"), a confidential informant, proceeded to Morton, Mississippi, to buy crack cocaine. After Wallace and Floyd arrived in Morton, Wallace bought three (3) rocks of crack cocaine from a person identified by Floyd as the defendant, Tillis.
On June 11, 1992, Tillis was indicted by the grand jury of Scott County for the sale of cocaine in violation of § 41-29-139(a)(1) of the Mississippi Code Annotated. During discovery, Tillis filed a motion to disclose the name of the confidential informer.
At trial, which began on October 19, 1992, the state presented Wallace, who identified Tillis as the man who sold the cocaine to Wallace. Floyd also identified Tillis as the person who sold the cocaine to Wallace on October 25, 1991. During cross-examination, Floyd was asked what happened between him and Tillis "back in the late seventies when you got his wallet." The state objected on the grounds of remoteness, and the jury was excused.
Outside the presence of the jury, Floyd testified that "in the early seventies," he and Tillis fought over a basketball, not a wallet, and that he was hit in the head with a tree limb which resulted in an injury requiring stitches. Floyd further testified that since the incident, although he and Tillis had not been close friends or enemies, there had not been any trouble or other conflicts between them. Floyd denied ever threatening to "get" Tillis.
*1146 After the proffer, the trial judge stated inter alia "I can't see where something that happened twenty years ago should be admitted in this case as an impeachment of this testimony. So, on the basis of remoteness, I am going to sustain the objection."
Later in the trial, defense counsel renewed his efforts to impeach Floyd by stating that if the defendant, Tillis, were permitted to testify about the fight, he would testify that the fight occurred in the late seventies and that since that time there had been no contact between the two of them. Again the trial court ruled to exclude the proffered evidence on the ground that it was too remote.
As the only witness to testify in his behalf, Tillis testified that he did not sell cocaine to Wallace on October 25, 1991. He explained that he didn't remember where he was on the day of the drug sale, but that he was either at work or on the way home from work.
At the close of trial, the jury returned a verdict of guilty. Tillis was sentenced to serve thirteen (13) years in the custody of the Mississippi Department of Corrections, and to pay a $5,000.00 fine. Upon payment of the fine, three (3) years of the sentence would be suspended, and Tillis would be placed on probation for five (5) years.

III.
"While the admissibility of evidence is largely within the discretion of the trial court and reversal may be had only where that discretion has been abused, the discretion of the trial judge must be exercised within the boundaries of the Mississippi Rules of Evidence." Cooper v. State, 628 So.2d 1371, 1375 (Miss. 1993) (citing Johnston v. State, 567 So.2d 237, 238 (Miss. 1990)). Rule 103 of the Mississippi Rules of Evidence provides that:
(a) Effect of Erroneous Ruling. Error may not be predicted upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
... .
(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.
Miss.R.Evid. 103. Additionally, Rule 616 provides that "For the purpose of attacking the credibility of a witness, evidence of bias, prejudice, or interest of the witness for or against any party to the case is admissible." Miss.R.Evid. 616. As the majority has clearly stated, Rule 616 must be interpreted as it relates to other rules of evidence. Rule 401 provides that "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Miss.R.Evid. 401 (emphasis added). The comment to Rule 401 further provides that "If the evidence has any probative value at all, the rule favors its admission. Such has been the experience under Federal Rule of Evidence 401 which is identical to this rule. Young v. Illinois Cent. Gulf R. Co., 618 F.2d 332 (5th Cir.1980)." Miss.R.Evid. 401 cmt.
During the cross-examination of the state's witness, Floyd, Tillis sought to show that Floyd was biased or prejudiced toward him by offering evidence of a prior fight between the two of them. The state objected on the ground that the fight occurred sometime in the seventies and was too remote. Tillis then made the following proffer of Floyd's testimony, outside the jury's presence:
Q. All right. What happened between you and Howard back in '75, '75, in reference to you getting his wallet?
A. I don't have no memory of me getting his wallet.
Q. All right. Do you recall, then, a fight between you and Howard where you were hit and had to go to the hospital?
A. Yeah. That was in the early seventies.
Q. All right. You say it was in the early seventies?
A. Yeah. It was about  it wasn't about no wallet.
Q. All right. Do you know what it was over?

*1147 A. It was over a basketball.
Q. Over a basketball. All right. So, there was a fight between you and Howard?
A. Right.
Q. And, as a result of that fight, what happened to you?
A. I got hit in the head with a piece of tree limb and had to go to the hospital and get some stitches.
Q. All right. So, since that time, you and Howard have not been friends at all; have you?
A. I cannot say we have been friends. Me and Howard haven't never had no trouble. I ain't never been no enemy to him.
Q. You haven't made remarks to folks that you was going to get him?
A. No, sir.
Q. But, y'all haven't been, since this incident happened and he hit you with a tree limb, you just kind of have gone your separate way and he has gone his; have you?
A. Yeah, I have. I know him. We haven't had no  he got some wood for me. I had him get some wood for me, some firewood.
Q. Well, the relationship between you and Howard all these years is y'all just kind of look at each other, and that's about it; isn't it?
A. No, we have talked. You know, we haven't been no enemies. We haven't been no close friends, but we haven't been no enemy.
Q. All right.
BY MR. LEE: Judge, that is basically what I want to 
BY THE COURT: Do you have any questions?
BY MR. TURNER: No, sir.
BY THE COURT: You object to this?
BY MR. TURNER: Yes sir, Your Honor. We object for two reasons. First, on the grounds of remoteness, and secondly, under Rule 608(b) specific instance of conduct for the purpose of attacking credibility may not be proved. It has to go to general credibility. For one thing, we think it is too remote. For instance, we have got a prior conviction of the Defendant in the late seventies. You know, if Mr. Lee wants to concede the late seventies isn't too remote, we would like to bring that up if he takes the stand; but, it is our understanding we would not be able to because of the remoteness. We think the same thing would apply to this situation.
BY MR. LEE: Your Honor, I'm not so much attacking the credibility of the witness, but I am laying the groundwork for the motive for this man to take these agents to a person other than Howard Ray Tillis, and Howard Ray Tillis, of course, is denying at this point that he was there, and I think I can show some conflict between this witness and Howard Ray Tillis, although it was a number of years ago, other testimony, possibly through the Defendant, that can bring some of this forward to show he would have a motive.
BY THE COURT: Can you show any conduct on the part of this witness against the Defendant in the year ensuing after the conflict?
BY MR. LEE: Well, it is not so much conduct, but lack of conduct between them, as to what their relationship was that would negate the testimony that Howard Tillis would permit Eddie Lee Floyd to come up to him and have him sell illegal drugs to a third party.
At this point, the Court examined Floyd and the following colloquy transpired:
Q. Eddie Lee Floyd, let me ask you a question. Where do you live? Where have you lived since this problem you had with Tillis in the 1970's?
A. See, at that time, both of us stayed in the same community just one street over from each other.
Q. At that time; but, where have you lived since then?
A. I moved out of that area last year; but, at that time, I stayed in that area until that time.
Q. You lived in that area, the same area, with Tillis until last year?

*1148 A. Until last year.
Q. Where do you now live?
A. 200 Lyles Drive. That is across town.
Q. In the city of Morton?
A. City of Morton.
Q. And, he lives in the City of Morton also?
A. Right.
Q. Have you had any conflicts with him since then, any violent conflicts?
A. No, sir.
BY THE COURT: Do you have any questions, Mr. Lee, along the lines of the questions of the Court?
BY MR. LEE: No, sir.
BY THE COURT: Do you, Mr. Turner?
BY MR. TURNER: No, sir.
BY THE COURT: I am going to sustain the objection on the basis of remoteness. According to this witness, he testified this happened in the early 1970's, some twenty years ago. That they have lived in the same community since then, up until last year, for some nineteen years, without any physical problems, any problems at all. So, I can't see where something that happened twenty years ago should be admitted in this as an impeachment of his testimony. So, on the basis of remoteness, I am going to sustain the objection.
Again, at the close of the state's case, the defense asked the court to reconsider its ruling on excluding the evidence of the prior fight between Tillis and Floyd. The following colloquy transpired outside the jury's presence:
DEFENSE: Judge, my Defendant desires to testify. Again, I would like to have the Court reconsider its ruling on permitting the Defendant to testify to an incident that he will say occurred in the late seventies, wherein the witness Eddie Lee Floyd took a basketball or wallet from him, which resulted in a fight, which Floyd was substantially injured and had to go to the hospital. The Defendant would testify that since that time, there has been no contact between them. There has been no violence or anything. There has absolutely been no contact or dealings between these two, which the Defendant feels would predicate to the jury that he would not have purchased drugs from someone he never had dealings with because of an altercation that happened some years ago. So, we feel if the Court precludes that, you are cutting off a vital part of the Defendant's defense in this case.
BY THE COURT: Even if you accept his testimony that it occurred in the late seventies, you are still talking about in excess of twelve years, and any animosity that Floyd might have toward your client is rebutted by the fact that on this day, if you accept the testimony of the witnesses, he went to him and introduced him to a person and made a sale, so he must not have had too much animosity.
DEFENSE: Well, Tillis is going to deny that he bought drugs from him. Therefore, the animosity between these fellows, even though it was a number of years, we feel it would be vital to lay the predicate for the jury to determine whether or not Floyd was telling the truth.
BY THE COURT: Well, Tommy, I don't know of a case on this point. I can't recall one, at least, regarding remoteness, but I can recall a case that you and I tried here in this Courtroom, when I was the District Attorney and you were the County Attorney, Perkins v. State. Our friend, W.C. Thompson, defended that case, and testimony was admitted of prior difficulties, and I believe it was six months at that time, and the Supreme Court said that was not too remote, but we were talking about six months, and we based that testimony on that famous case over in Jackson between man and wife, where there was a homicide, and the issue was prior difficulties, but, at least, on prior difficulties between the parties, they are talking about six months, and if you are talking about prior difficulties between the witness and the Defendant, it is twelve years. Certainly, I would think that would be remote. DEFENSE: Well, in the prior difficulties like in the Perkins case you are talking *1149 about, that is whether or not prior difficulties would be a basis for malice, that was a murder, to affect malice between the two. This incident, we are trying to lay the predicate that something happened between them. The Defendant is going to testify that he has no dealings with him all these years. They stayed separate and apart, even though there was no violence between them, and that the relationship was such that he would not have had any dealings with him, including selling drugs to him.
BY THE COURT: Well, what we are really talking about is revenge, and I would think revenge has a certain amount of malice within it. If it was within, say, six months, I think you could argue he set up this fellow just as a matter of revenge or malice, but no difficulties in over twelve years, I don't think so. I am going to sustain it.
Mississippi allows "wide-open cross-examination of any matters affecting the credibility of the witness." Meeks v. State, 604 So.2d 748, 755 (Miss. 1992); Miss.R.Evid. 611(b); Sayles v. State, 552 So.2d 1383, 1385 (Miss. 1989); Miskelley v. State, 480 So.2d 1104, 1111-12 (Miss. 1985). The "cross-examination includes a witness' possible interest, bias or prejudice in a case." Meeks, 604 So.2d at 755; Hill v. State, 512 So.2d 883 (Miss. 1987); Sayles, 552 So.2d at 1386. The right to impeach or to attack a witness' credibility is a right both secured by Mississippi evidentiary rules and the confrontation clauses of federal and state constitutions. Sayles v. State, 552 So.2d 1383, 1387 (Miss. 1989); Suan v. State, 511 So.2d 144, 148 (Miss. 1987); Valentine v. State, 396 So.2d 15, 16-17 (Miss. 1981).
In the case sub judice, Tillis' attempt to effectively cross-examine the state witness Floyd, was substantially curtailed by the trial court's refusal to permit Tillis' defense counsel's inquiry into any animosity, bias or prejudice Floyd may have harbored against Tillis as a result of a fight discussed in defense counsel's proffer. Although the trial court may have believed that the elapsed period of time between the fight and the current difficulties made any possible bias or prejudice remote and therefore not relevant, we do not know what feelings and thoughts may have smouldered deep in the heart and mind of the state's witness for the intervening years. The motive behind an informant's actions is always an issue for examination.
Floyd, according to his trial testimony, was working with the Bureau of Narcotics as part of the terms of his probation. Therefore, it was to his advantage to facilitate the arrest and conviction of others. The City of Morton is relatively small and the available confidential informants are probably few in number. Whether Floyd held a personal grudge against Tillis and whether any such grudge could have enticed Floyd to falsely accuse Tillis or testify falsely concerning Tillis' involvement in the selling of cocaine is a matter to be properly determined by the jury. Unfortunately, the trial court did not allow evidence that could have shed light on this issue to go to the jury, declaring such evidence to be too remote and not relevant.
The animus, motive, or ill-will of a prosecuting witness who testifies against the defendant is never an irrelevant inquiry. The proffered evidence should have been submitted for the jury's consideration. The testimony, if permitted and fully developed, would have shown that Floyd was biased against Tillis or that Floyd had a motive to lie. The jury may well have believed that Floyd had a personal stake in assisting the state in order to protect his own self interests. As Floyd was the only testifying witness familiar with Tillis, effective impeachment of Floyd could well have directly affected the jury's consideration of the incriminating testimony he gave. The jury, rather than the trial judge, should have been given the opportunity to determine for themselves the witness's credibility in light of his present state of mind toward the defendant.
The United States Supreme Court has held that "the sixth amendment right of an accused to confront the witnesses against him requires that a defendant in a state criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at showing that the witness is under probation for a prior criminal conviction." Carrillo v. Perkins, 723 F.2d 1165, 1167 (5th Cir.1984) (citing Davis v. *1150 Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)). In Davis, "the Court explained how a witness's credibility can be attacked by revealing his possible biases, prejudices, or ulterior motives and declared the exposure of testimonial motivation `a proper and important function of the constitutionally protected right of cross-examination.'" Id. The Davis Court, addressing the importance of effective cross-examination, stated:
[I]t seems clear to us that to make ... inquiry [into the witness's credibility] effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness. Petitioner was thus denied the right of effective cross-examination which "would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it"
Id. (quoting Smith v. Illinois, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed.2d 956 (1968)).
Tillis purported to present evidence to 1) show bias, animosity or prejudice of the witness toward him and 2) to corroborate his defense that he would not have sold drugs to a third party introduced to him by Floyd, a person with whom he has had no contact with for the past twenty years. Even the state concedes that the fact that a state witness previously had a fight with the defendant, and has carried a grudge against the defendant until the time of trial, would be probative of the witness' state of mind toward the defendant.
Defense counsel raised a timely objection to the exclusion of the proffered testimony, appropriately renewed his objection and received the lower court's ruling on each objection thus properly preserving the issue for appeal. There is nothing in Rule 616 of the Mississippi Rules of Evidence, nor any of the other exclusionary rules, which lends support to the trial court's exclusion of the evidence of bias or prejudice as "too remote." Neither is there anything in the Rules which would allow the circuit court to circumvent the rule. The jury should have been allowed to hear the evidence and to weigh it with the other evidence as well. Miskelley v. State, 480 So.2d 1104, 1108 (Miss. 1985) ("any evidence that is material and relevant, which has a bearing on the motives, bias and interests of a witness is admissible ... where there is doubt as to the relevance of the examination, the scales should weigh in favor of admitting the examination"); Sanders v. State, 352 So.2d 822, 824 (Miss. 1977) ("credibility of a witness may be impeached on cross-examination by showing bias, prejudice, motive and hostility") and the Fifth Circuit has held that "[t]he trial judge's discretionary authority to limit cross-examination `comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment.'" Carrillo v. Perkins, 723 F.2d 1165, 1168 (5th Cir.1984).
Here, because Tillis' "right to a fair trial, a constitutional right, is involved, reversal is required unless `on the whole record, the error was harmless beyond a reasonable doubt.'" Newsom v. State, 629 So.2d 611, 614 (Miss. 1993) (quoting Hoover v. State, 552 So.2d 834, 840 (Miss. 1989)). Because I cannot say beyond a reasonable doubt that the exclusion of this evidence did not affect the verdict, the error is not harmless and I believe this Court should vacate the judgment. Therefore, I would reverse Tillis' conviction for the sale of a controlled substance and remand to the Circuit Court of Scott County.
Accordingly, I respectfully dissent.
HAWKINS, C.J., and BANKS and McRAE, JJ., join this opinion.