## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2001-KA-01486-SCT

*CHARLES EDWARD MORRIS, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 7/27/2001 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH, III |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DARNELL FELTON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/30/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.

### WALLER, JUSTICE, FOR THE COURT:

¶1. Charles Edward Morris, Jr., went to the home of Antonio Sykes on March 27, 2001. When he arrived, Antonio Morris ("Antonio"), Sykes' four-year-old child who was not related to Morris, was in the yard. Morris asked Antonio to go inside and get his father. When Sykes came outside, Morris and Sykes began arguing. Several people, including Antonio, were standing around, watching the argument, which became increasingly heated. When Morris began to walk away, he and Sykes began calling each other names. Morris turned around, drew his handgun, and fired four shots in the direction of Sykes and the

bystanders. One shot hit Antonio, and he died shortly afterwards. Morris was found guilty of the depraved heart murder of Antonio. He was sentenced as a habitual offender to life imprisonment without parole.

¶2.     On appeal, Morris contends that the circuit court erred by impermissibly restricting his voir dire of prospective jurors, denying his motion to quash the jury panel, and limiting his cross-examination of a prosecution witness. We find that these issues are without merit and affirm the conviction and sentence.

## DISCUSSION

### I.     WHETHER THE CIRCUIT COURT IMPERMISSIBLY RESTRICTED THE DEFENSE'S VOIR DIRE.

¶3.     Morris complains that the circuit court cut off his voir dire regarding the venirepersons' feelings about a child being killed. The standard of review in examining the conduct of voir dire is abuse of discretion. *Jackson v. State*, 791 So. 2d 830, 835 (Miss. 2001). An appellant must show actual harm or prejudice before this Court will reverse a trial court's limitation on voir dire. *Stevens v. State*, 806 So. 2d 1031, 1054 (Miss. 2001).

¶4.     During voir dire, Morris asked the venirepersons several questions about their feelings about a child being killed and if those feelings would affect their judgment. He also asked several questions about the presumption of innocence which the circuit court ruled were "out of context." Morris contends that none of the venirepersons responded to his questions, but the record shows tacit responses, either raising or not raising their hands or nodding or shaking their heads.

¶5.     Morris' voir dire was *not* limited by the trial court. He asked the same question over and over again. The trial court told defense counsel that what he was asking was confusing. Indeed, the trial court itself did not understand the questions. Only after it was clear that further questioning would be futile did the trial court cut defense counsel off.

2

¶6.     Morris alleges that none of the venire responded to his questions and he was not given an opportunity to ask follow-up questions. The record clearly shows that, even though there was no *verbal* response, venirepersons were either nodding or shaking their heads or raising their hands in response to defense counsel's questions. Defense counsel had an opportunity right then to ask follow-up questions, but he did not choose to avail himself of this opportunity.

¶7.     Morris claims that he was not allowed to present a correct statement of the law as to the presumption of innocence. The trial court held that what defense counsel was stating was clearly erroneous. In any event, per arguendo, any error was harmless because the trial court instructed the jury on the presumption of innocence, and juries are presumed to follow the instructions of the court. *McCollum v. State*, 785 So. 2d 279, 283-84 (Miss. 2001).

¶8.     Finally, and most importantly, Morris has presented absolutely no evidence that he was harmed or prejudiced in any way by the alleged limitation of his voir dire. This issue is without merit.

## II.    WHETHER THE CIRCUIT COURT ERRED IN DENYING MORRIS' MOTION TO QUASH THE JURY PANEL[1] DUE TO PRE-TRIAL PUBLICITY.

¶9.    We will find that a voir dire was sufficient to ensure a fair and impartial jury where the appellant does not present any evidence indicating that the jury was not fair and impartial and fails to show any prejudice resulting from how the circuit court conducted the voir dire. *Manning v. State*, 735 So. 2d 323, 336 (Miss. 1999).  A trial court's finding that an impartial jury was impaneled will not be reversed unless the court abused its discretion. *Holland v. State*, 705 So. 2d 307, 336 (Miss. 1997).  "In any case, this Court will treat with deference a venire person's assertions of impartiality." *Id.* (citing *Scott v. Ball*, 595 So. 2d 848, 850 (Miss. 1992)).  In *Gray v. State*, 728 So. 2d 36, 66-67 (Miss. 1998), we affirmed a finding that the jury was impartial because "the panel members were asked repeatedly by the trial judge, the State's attorneys, and Gray's attorneys if they could be fair and impartial[, and there was] nothing in the record to indicate that the jurors were not fair and impartial.

¶10.    The record shows that jurors #8, #11, #14, #16, #19, #26, #28, #35, #37, #39, #45, #48, #51, #53, #57, and #61, sixteen people out of the sixty-plus-person venire, responded affirmatively to the prosecution's question about whether they had read or heard something about the case.  Jurors #14 and #19 were struck for cause by the circuit court. The remaining venirepersons were individually brought to the judge's chambers, where the judge, the prosecutor, and the defense questioned them further about their exposure to information about the case.  Each of these people, except for Juror #35, stated that could set aside what they had learned and be fair and impartial.  Juror #35's memory of what he had heard or read

[1]The motion made at the trial level was one to quash the jury panel.  However, Morris argues on appeal that the entire venire should have been quashed.  We consider only the motion to quash the jury panel because the circuit court never considered a motion to quash the entire venire.

was so vague that he stated that the only thing he remembered was that the shooting occurred. Evidently, the circuit court, the prosecutor and the defense did not think that further questioning was necessary.

¶11.    Defense counsel challenged Juror #11 for cause because her father had been murdered 19 years earlier and because she works with senior citizens in the area where the killing occurred. Defense counsel stated, "it just behooves me that she had not talked and formulate some type opinion from talking with those senior citizens over there in that area. I don't see how she could be fair and impartial." The circuit court denied the challenge for cause because Juror #11 stated she could be fair and impartial. The defense also challenged for cause Juror #16, stating, "he said that he don't remember what he read, but then he said – he finally said he doesn't think that anyone can say that they could actually be fair and impartial, that all they could say is 'I think.'" The circuit court again denied the challenge for cause, stating that he had studied Juror #16's demeanor, and that, "[i]n fact, I asked him questions after you did and I think that he was being honest with what he said and I think that he is a fair and impartial juror."

¶12.    The defense used its peremptory strikes against jurors #5, #6, #7, #10, #11, #13, #16, #17, #21, #23, #28, #37, #42, and #43, meaning that only four strikes (#11, #16, #28, and #37) out of twelve were against prospective jurors who had been exposed to information about the killing. The State used one of its peremptory strikes against Juror #26. Because #45 was the last alternate chosen, #48, #51, #53, #57, and #61 were dismissed.

¶13.    The long and short of this analysis is that, out of sixteen venirepersons who stated that had been exposed to pre-trial publicity, only Jurors #8, #35 and #39 were seated on the jury. Jurors #8 and #39, after intense questioning in chambers by the court, the prosecution and defense counsel, repeatedly stated they could set aside what they had learned and be fair and impartial. These jurors were called into

chambers for individual questioning, and all of them except for #35 stated that whatever they had heard or read would not keep them from being fair and impartial.

¶14. The defense then moved to quash the jury panel, stating that, because of the size of the community, it was hard for anyone not to have heard about the crime. The defense also stated that all of the venire agreed that when a child was injured, they would want to correct that wrong. He admitted that there had not been a "rash" of newspaper articles, but that those venirepersons who did not state that they had heard about the case were lying. The circuit court denied the motion because the panel had been "repeatedly asked whether or not they could be fair and impartial and render a verdict based on the evidence and from the witness stand and the law given by the Court and they've all indicated that they could." The circuit court also noted that every juror who stated that they had read or heard something about the case was questioned individually in chambers.

¶15. On appeal, Morris argues that the circuit court "never specifically addressed the factual question about the remaining panel's lack of honesty and forthrightness about hearing or reading something about the case," and that "[b]y the sheer number of venire persons who responded to the prosecution's question affirmatively, it forced the defense to keep venire persons on the panel that admitted to reading or hearing about the case."

¶16. The State responds that Morris "has not met his burden of showing that the panel members had substantial knowledge about matters but failed to answer affirmatively when questioned on the subject. Morris does not demonstrate that the panel members who did not answer affirmatively in fact 'had substantial knowledge of the information sought to be elicited.'" *Sewell v. State*, 721 So. 2d 129, 137 (Miss. 1998).

¶17.    We agree with the State's argument. Morris has failed to demonstrate to either the circuit court or this Court that any juror had substantial knowledge of the information sought to be elicited. When the jurors failed to respond affirmatively, Morris could have questioned those jurors further. He failed to do so. Morris had the opportunity to question those jurors who he now claims suffered from a "lack of honesty." If he had those concerns when they failed to answer affirmatively, he should have followed up by asking them further questions in order to make certain that had never heard of the crime or to demonstrate that they were being deceptive by failing to answer.

¶18.    This issue is without merit.

### III.    WHETHER THE CIRCUIT COURT IMPERMISSIBLY RESTRICTED MORRIS' CROSS-EXAMINATION OF A PROSECUTION WITNESS.

¶19.    Sixteen-year-old Latessa Randolph was Morris' girlfriend and was pregnant with his child at the time of the incident. She had previously dated Sykes. Latessa walked down the street with Morris to leave the argument with Sykes and was standing by Morris when the shots were fired. At trial, she testified that after the shots had been fired, Morris asked her to lie and claim that she had fired the shots because he had been to jail before. She did as he asked, turned herself in to the police, and signed a written confession. Later, at the urging of her mother, she recanted.

¶20.    On cross-examination, defense counsel attempted to ask Latessa about the closeness of her mother and Sykes' mother. Defense counsel believed that the relationship between the two mothers would impeach Latessa's testimony, inferring that she had a reason to change her statement. The circuit court did not allow defense counsel to ask these questions because the relevance of such matters was too remote: the relationship of the two mothers had no bearing on Latessa's truthfulness.

¶21. "The admissibility of evidence rests within the discretion of the trial court." *Gleeton v. State*, 716 So. 2d 1083, 1089 (Miss. 1998). We will only reverse if the trial court has abused its discretion. *Id.* Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." M.R.E. 401. To be admissible, evidence of bias must have the tendency to make the facts to which the witness testified less probable than it would be without the evidence of bias. *Tillis v. State*, 661 So. 2d 1139, 1142 (Miss. 1995). The trial court is generally allowed wide discretion concerning the admission of evidence offered to suggest bias by a witness against the defendant. *Id.*; *Miskelley v. State*, 480 So. 2d 1104, 1111-12 (Miss. 1985).

¶22. Evidence of the closeness of Latessa's mother and Sykes' mother would not have made the facts to which Latessa testified less probable than it would be without the evidence of bias. Several witnesses saw the argument between Morris and Sykes and saw Morris fire the gun. As soon as Latessa confessed to the shooting, the police doubted her story.

¶23. To present evidence in support of Morris' theory of self defense, defense counsel also sought to elicit testimony about Sykes' alleged possession of a gun and his animosity toward Morris at a time six months prior to the incident when Sykes and Latessa were dating. The circuit court ruled that Morris could not put on evidence of Sykes having a gun in his possession six months before the incident unless he first put on some evidence that Sykes was the aggressor or had a gun on the day of the incident.

¶24. Morris has not presented any substantive evidence, either to the circuit court or to this Court, to support his story that Sykes possessed a gun and fired that gun on the day of the incident. There was absolutely no proof put on at trial that Sykes was the aggressor or that Morris was justified in using deadly force to repel an attack against him. Morris neither testified nor put on any evidence in his case-in-chief

that he acted in self-defense. In the absence of such evidence, Sykes' alleged possession of a gun and animosity toward Morris six months earlier was not relevant. The circuit judge did not preclude Morris from asking these questions altogether; rather Morris was asked to establish a proper predicate for the questions. *See **Rochell v. State***, 748 So. 2d 103, 112 (Miss. 1999). Therefore, the trial judge did not abuse his discretion in limiting cross-examination, and this issue is without merit.

## CONCLUSION

¶25. We affirm Charles Edward Morris, Jr.'s conviction for depraved heart murder and his sentence of life imprisonment without possibility of parole.

¶26. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE NOT TO BE REDUCED OR SUSPENDED AND THE APPELLANT SHALL NOT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE. SENTENCE SHALL RUN CONSECUTIVELY WITH ANY AND ALL SENTENCES PREVIOUSLY IMPOSED.**

**PITTMAN, C.J., McRAE AND SMITH, P.JJ., COBB, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR.**